790 F.2d 1071
 George DALY, Nicholas Street and David Layton, Appellants,
Margaret Suzanne Starnes, Appellee,
v.
Charles Vernon HILL; Ralph Eugene Miller; James Michael
Neff; Paul Douglas; Johnny Wayne Wagner;
Charles L. Waldrep and Gaston County,
North Carolina, Appellees.
In re Margaret Suzanne STARNES, Plaintiff,
v.
Charles Vernon HILL; Ralph Eugene Miller; James Michael
Neff; Paul Douglas; Johnny Wayne Wagner;
Charles L. Waldrep and Gaston County,
North Carolina, Defendants.
 No. 84-1715.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1985.
Decided April 21, 1986.
 
 Robert T. Wilder (George Daly, Charlotte, N.C., on brief) for appellants.
 Frank B. Aycock, Charlotte, N.C., (Margaret Suzanne Starnes, pro se, on brief), for appellees.
 Before RUSSELL and ERVIN, Circuit Judges, and KELLAM, United States District Judge for the Eastern District of Virginia, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 This is an appeal from an order awarding attorney's fees to the plaintiff in a Sec. 1983 police brutality case, 589 F.Supp. 341 (W.D.N.C.1984). George Daly and Nicholas Street brought this action on behalf of Margaret Suzanne Starnes against Gaston County police officers and Gaston County, North Carolina. Starnes agreed to pay her attorneys a 25% contingency fee. The case settled before trial, resulting in a $35,000 damage award for Starnes. The consent decree contemplated an award of attorney's fees, costs and expenses to be determined by the court, in addition to the damage award. Daly, Street and Street's law partner, David Layton, then sought attorney's fees, costs and expenses under 42 U.S.C. Sec. 1988, as well as enforcement of the contingency fee agreement. In awarding fees, the district court disallowed certain requested hours and expenses, disallowed fees to Layton and reduced the allowable hourly rate for Daly and Street. The court declined to adjust the fee upward to account for excellent results obtained. The court also refused to grant additional compensation under the contingency fee agreement. Daly and Street now appeal, claiming that the district court abused its discretion by reducing the hourly rate, disallowing certain hours and expenses, refusing to adjust the award upward, and refusing to order compensation under the contingency fee agreement. We affirm in part and reverse in part.
 
 I.
 
 2
 In the underlying Sec. 1983 action in this case, Starnes alleged that on the evening of May 27, 1982, Gaston County Sheriff's deputies in plain clothes driving an unmarked vehicle chased her without cause and shot at her car, very nearly hitting her. She alleged that at no time during this chase did they identify themselves as sheriff's deputies. Starnes was understandably terrified during this incident and alleged that she suffered continuing emotional harm thereafter. Criminal charges were brought as a result of this event, and four of the five deputies involved were indicted. None of the deputies were convicted following a September 1982 criminal trial at which Starnes testified.
 
 
 3
 Attorneys in the civil case discussed the possibility of settlement prior to the criminal trial. At that point Nicholas Street was sole counsel for the plaintiff. Street suggested a $60,000 settlement. Defense counsel Frank B. Aycock, III refused the offer, but indicated an interest in settling after the criminal trial. In October 1982, Street brought George Daly into the case due to Daly's expertise in civil rights actions. In January of 1983, after the criminal trial, Aycock suggested a $10,000 settlement. Daly then proposed a counter-offer of $200,000. At that point settlement negotiations broke off. Attorneys for both sides then engaged in discovery and preparation for trial. After resuming negotiations in December 1983, the parties reached a settlement, which was filed on March 5, 1984. Pursuant to the settlement, Starnes received $35,000 in damages and was entitled to recover "her costs, reasonable expenses and reasonable fee for her counsel, in amounts to be set by the court."
 
 
 4
 Daly, Street and Layton, Street's law partner, then filed a petition for attorney's fees, costs and expenses. They sought compensation for hours and rates as follows:
 
 
 5
 Counsel Hours Rate Fee
------------------ ----------------- ---------------- ----------------------
Daly 188.1 120 22,572.00
Street 220.7 80 17,656.00
Layton 20.2 80 408.04[1]
Note FN1. It is unclear whether the requested fee for Layton represents an
Note intentioonal reduction or an error in mathematics. This discrepancy is of no
Note consequeence, however, as Layton does not appeal the district court's decision
Note denying him any attorney's fees in this case.
 ----------------------
Total 40,636.04
 
 
 6
 In addition, they sought $5,466.07 in costs and expenses. They also requested that, to the extent they were not awarded all fees requested, the court enforce a contingency agreement between Starnes and her attorneys. The agreement contemplated that Starnes would pay her lawyers 25% of her net recovery. The agreement further stated that "client acknowledges that lawyers may, if successful, apply to the court for a further fee award, beyond the contingent fee she agrees to pay. Client understands that, were such a further award not a possibility, lawyers would not take her case except upon a substantially increased contingent fee." Daly and Street argue that under this contract Starnes was required to pay them any difference between their requested rates and hours and the attorney's fee awarded by the court.
 
 
 7
 In ruling on the petition for attorney's fees, costs and expenses, the district court considered the factors outlined in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974), and adopted by this court in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).[2] The court found, in part, that the case was not novel or difficult, that the skill required in the case was not greater than that usually required of Daly, that the attorneys were not precluded from other employment due to their acceptance of the case,[3] that the results obtained were "most satisfactory," that Daly was an experienced attorney in 1983 actions, and that the type of case was not "undesirable." Considering these factors and the affidavits submitted by the parties, the court concluded that the hourly rates requested by Daly and Street were unreasonable. Rather, $90 per hour was a proper rate for Daly's out-of-court work during 1982 and 1983, and $70 per hour was a proper rate for Street, particularly in light of the facts that Street practiced in Gastonia, North Carolina where customary rates tended to be lower than in Daly's location in Charlotte, North Carolina, and that Street did not have expertise in Sec. 1983 cases. Important to the court's reduction in the requested rates was its belief that it was not proper to award fees based upon current market rates. Rather, the court determined that fees should be awarded based upon the rates at the time the work was performed. The court did not adjust the rates from prior years to account for inflation or delay in payment.
 
 
 8
 The district court then considered the propriety of the hours claimed by the attorneys and concluded that certain requested hours were not reasonable. The court found that 24.6 hours spent by Daly and 10.3 hours spent by Street in preparing and arguing the motion for the fee award was "totally unreasonable in this case," (emphasis in original) because there was no dispute as to the attorneys' entitlement to fees, but only as to the amount of the fee award. The court found that five hours for Daly and two for Street was a proper allotment of time.
 
 
 9
 The court also found that 107.4 hours claimed by Street for client conversations was unreasonable. The court determined that "[t]en hours of conferences with the client would be a most generous allowance at $70 per hour. The court doubts that Mr. Street would have the gall to bill the plaintiff, a family friend, for the 107.4 hours in conversations." The court also found that Street's time charged for 84 different instances of "File Review" in conjunction with client conversations was not reasonable. Street had claimed 47 hours for depositions and preparation for depositions. The court found some of this time to be duplicative because most of the depositions were handled by Daly. Consequently Street was only entitled to compensation for 25 hours of deposition work. Finally, the court disallowed 1.5 hours claimed by Street for "File Review and conversations with staff about time," and 1.1 hours for "[t]elephone conversation with Press." In sum, of the 188.1 hours requested by Daly, 165.3 were allowed and 22.8 disallowed. Of the 220.7 hours requested by Street, 90.5 were allowed and 130.2 disallowed. The court also disallowed the 20.2 hours claimed by Layton, finding that he was not sufficiently involved in the case to warrant compensation.
 
 
 10
 In addition to attorney's fees, the Consent Decree provided for compensation for costs and expenses. The district court determined the expense award according to what would have been proper under 28 U.S.C. Sec. 1920 and Fed.R.Civ.P. 54(d) if the case had been tried. The court did not allow expenses for investigative charges, telephone charges, copying charges, postage charges, or attorney travel charges "because, if the attorneys are adequately compensated, those expenses are absorbed in the overhead and compensated for by the reasonable fee." Consequently, of the $5,683.52 in costs and expenses requested, the court allowed $4,028.10.
 
 
 11
 Finally, the court found that Daly and Street were not entitled to additional compensation under the contingency fee agreement because such compensation would constitute a "windfall."
 
 
 12
 Daly and Street now appeal the district court's order. They argue that the district court's determination of a reasonable rate was clearly erroneous, that the court abused its discretion in failing to adjust the fee award upward to account for excellent results, in disallowing some of Street's hours, and in disallowing certain hours spent by both attorneys in preparing the motion for fees. They further argue that the court erred in disallowing litigation expenses and in refusing to order additional compensation under the contingency fee contract between Starnes and her lawyers.
 
 II.
 
 13
 The Civil Rights Attorney's Fees Awards Act, 42 U.S.C. Sec. 1988, provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." As the Supreme Court has recognized, "[t]he purpose of Sec. 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 94-1558, 94th Cong., 2d Sess., 1 (1976) ). Congress anticipated that Sec. 1988 would further this end through attracting competent counsel to civil rights cases. See S.Rep. No. 94-1011, p. 6 (1976). Section 1983 is intended to facilitate litigation by civil rights plaintiffs, for "[c]ivil rights plaintiffs with meritorious claims 'appear before the court cloaked in a mantle of public interest.' " Hensley, 461 U.S. at 443 n. 2, 103 S.Ct. at 1944 n. 2 (Brennan, J., concurring in part and dissenting in part) (quoting H.R.Rep. No. 94-1558, 94th Cong., 2d Sess., 6 (1976) ).
 
 
 14
 In interpreting the requirements of Sec. 1988, the Supreme Court has turned to the legislative history of the statute. "The legislative history [of Sec. 1988] explains that 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.' " Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94-1011, 94th Cong., 2d Sess., 6 (1976) ). As the Court noted, Congress intended that district courts, in arriving at an appropriate fee award, consider factors such as those outlined in Johnson, 488 F.2d at 717-19.[4] See Hensley, 461 U.S. at 429-430, 103 S.Ct. at 1937-1938; Blum, 104 S.Ct. at 1546-47.
 
 
 15
 This court has long considered the Johnson factors to be the appropriate standards to guide a district court's discretion in awarding attorney's fees. See Barber, 577 F.2d at 226 (adopting Johnson factors). In Anderson v. Morris, 658 F.2d 246 (4th Cir.1981), this court articulated the appropriate procedure district courts should follow in considering these factors. Under Anderson, district courts must
 
 
 16
 first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially Johnson factors one and five.[5] The court should then multiply the number of hours reasonably expended by the customary rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affect the award.[6]
 
 
 17
 658 F.2d at 249 (citations omitted). Following Anderson, courts in this circuit have first determined a "lodestar" figure by multiplying the number of reasonable hours expended times a reasonable rate and then adjusting that figure upward, where necessary, to arrive at a proper fee award. Consequently, the Johnson analysis has been primarily undertaken after an initial fee award has been calculated. See, e.g., Willie M. By Singer v. Hunt, 564 F.Supp. 363, 365-68 (W.D.N.C.1983), aff'd in part, reversed in part on other grounds 732 F.2d 383 (4th Cir.1984).
 
 
 18
 While the Supreme Court continues to endorse use of the Johnson factors in calculating fee awards, Blum, 104 S.Ct. at 1548, the Court has disapproved of the procedure endorsed by this court in Anderson. Out of a concern that upward adjustments of a lodestar figure can sometimes result in "double counting," id. at 1549, the Court has suggested that most Johnson factors are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward. According to the Court, "the critical inquiry in determining reasonableness [of a fee award] is now generally recognized as the appropriate hourly rate." Blum, 104 S.Ct. at 1547 n. 11. If the hourly rate is properly calculated, "the 'product of reasonable hours times [the] reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of [Sec. 1988]." Id. at 1548 (quoting Hensley, 461 U.S. at 434, 103 S.Ct. at 1940).
 
 
 19
 In Blum, the district court had increased the lodestar figure by 50% to account for the novelty and complexity of the litigation, the quality of representation, the "riskiness" of the action and the results obtained. 104 S.Ct. at 1548. The Supreme Court found that the increase was not supported by the facts of the case. The Court found that, as a general rule, the novelty and complexity of a lawsuit will be reflected in the number of billable hours. Where an experienced attorney spends fewer hours on a complex case due to special expertise, that "special skill and experience should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award." Id. at 1549. Similarly, " 'quality of representation' ... generally is reflected in the reasonable hourly rate." Id.[7]
 
 
 20
 The court recognized that "results obtained" in the litigation are "relevant to the calculation of a reasonable attorney's fee." However, "[b]ecause acknowledgement of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award."[8]
 
 
 21
 Under Blum, the critical focus in calculating a reasonable attorney's fee is in determining the lodestar figure. If a lodestar fee is properly calculated, adjustment of that figure will, in most cases, be unnecessary. Consequently, Blum has shifted the timing of the Johnson analysis, as it has been applied in this circuit. The proper point at which the Johnson factors are to be considered is in determining the reasonable rate and the reasonable hours. A fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall. In "exceptional circumstances," this presumptively fair lodestar figure may be adjusted to account for results obtained and the quality of representation.[9] Under Anderson, only Johnson factors one and five were properly considered in determining the lodestar fee. As Blum makes clear, the lodestar fee is now the proper focus of the entire Johnson analysis in most cases. An attorney's fee award should accomplish "fair and reasonable compensation," Blum, 104 S.Ct. at 1550, in keeping with Congress' dual purpose of fully compensating prevailing parties for their attorney's fees and encouraging attorneys to handle civil rights cases. A proper computation of the lodestar fee will, in the great majority of cases, constitute the "reasonable fee" contemplated by Sec. 1988.
 
 III.
 
 22
 In addressing the reasonableness of the fee award in the case at bar, we are mindful of the Supreme Court's admonition in Hensley that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. at 1941. The Court emphasized that "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."[10] Id.
 
 
 23
 As this court recognized in Ballard v. Schweiker, 724 F.2d 1094, 1098 (4th Cir.1984),[11] we are not entitled to disturb a district court's exercise of discretion even though we might have exercised that discretion quite differently.
 
 
 24
 The fixing of attorney's fees ... is primarily the task of the district court. We have promoted uniform reasonableness in fixing attorney fees by identifying general standards to guide the decisionmaker.... Beyond providing such standards, however, the appellate court's role in achieving uniformity on a case-by-case basis is limited. It is important that the district court remain primarily responsible for resolving fee disputes, because it is in the better position to evaluate the quality and value of the attorney's efforts. The very discretion basic to the trial court's duties creates results that inevitably differ in degree. An appellate court, however, cannot quarrel with varying results among independently-minded trial judges that merely reflect differences in their individual judgments. We gauge only whether a trial court abuses its proper discretion.
 
 
 25
 Id. (citations omitted).
 
 A.
 
 26
 In this case, the appellants argue that the district court erred in disallowing many of the hours spent by Street conferring with the plaintiff and participating in depositions, and hours spent by both attorneys in preparing the motion for fees. We disagree.
 
 
 27
 In Hensley, the Supreme Court directed district courts to "exclude from the initial fee calculation hours that were not 'reasonably expended.' " 461 U.S. at 434, 103 S.Ct. at 1939 (quoting S.Rep. No. 94-1011, 94th Cong., 2d Sess., 6 (1976) ). Counsel for a prevailing party has a duty to exercise "billing judgment" to "exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.... 'Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.' " Id. at 434, 103 S.Ct. at 1940 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) (emphasis in original) ).
 
 
 28
 Street sought compensation for 107.4 hours for conferences with the plaintiff and her family. Street's commitment to work closely with his client is certainly laudable. Conferences with clients are an important part of any litigation and attorney time reasonably spent with clients in preparing a case should be part of the hours compensated in an attorney's fee award. The burden of proving entitlement to compensation, however, rests with the prevailing attorneys. Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. In this case, Street's supporting affidavits are not detailed. They do not illuminate the way in which the many hours of client conferences may have aided Street's preparation of the case.[12] Accordingly, we cannot find that the district court erred in finding that the requested hours were unreasonable, and that compensation for ten hours was proper under the circumstances.
 
 
 29
 Street sought compensation for 47 hours expended in depositions and in preparation for depositions. The district court found that some of this time was duplicative because Daly was primarily responsible for the depositions. Consequently, the court reduced Street's allowable hours for depositions to 25. The district court was in the best position to determine whether the efforts of the two attorneys were duplicative. We are unable to conclude that the court's findings on this subject are clearly erroneous or that the court abused its discretion in determining that compensation for 25 hours was reasonable.
 
 
 30
 The attorneys requested compensation for a total of 37.9 hours spent in preparing and arguing the petition for fees. Time spent defending entitlement to attorney's fees is properly compensable in a Sec. 1988 fee award. Hymes v. Harnett County Board of Education, 664 F.2d 410, 413 (4th Cir.1981). In this case the district court found that the hours requested were "totally unreasonable" (emphasis in original), particularly in light of the facts that there was no dispute as to the attorney's entitlement to fees, and the attorneys and the court were "thoroughly familiar" with the case. We are unable to conclude, under the facts of this case, that the district court erred in finding that the requested hours were excessive. The district court was in the best position to determine the amount of time reasonably necessary under the particular circumstances. Therefore, we do not find that the district court abused its discretion in reducing the allowable hours spent defending entitlement to the fee.
 
 B.
 
 31
 The attorneys requested rates of $120 for Daly who is the more experienced of the two attorneys and who practices in Charlotte, North Carolina, and $90 per hour for Street who practices in Gastonia, North Carolina. As is customary, they submitted affidavits from other area attorneys as evidence that their requested rates were within the market rates generally charged for similar services. The affidavits, which were filed in March 1984, show that market rates in Charlotte at that time ranged from $100 per hour to $150 per hour for attorneys with Daly's experience. Market rates in Gastonia at that time for persons of Street's experience ranged from $75 to $90 per hour.[13]
 
 
 32
 The district court's analysis of the reasonableness of the rates requested was, on the whole, quite proper. The district court considered the skill and experience of the attorneys, the "most satisfactory" results obtained in the litigation, awards obtained in similar cases, and other Johnson factors. However, in assessing the weight to be accorded to the supporting affidavits, the court found it to be "significant that most of the hours for which Mr. Daly is claiming compensation were in 1982 and 1983, whereas the affidavits he has filed are based on 1984 hourly rates."[14] The court concluded that the requested rates were unreasonable, and that $90 per hour for Daly and $70 per hour for Street were proper hourly rates.
 
 
 33
 In light of the fact that the rates adopted by the district court were lower than the lowest market rate in each city supported by the evidence before the court, it is clear that the court intended the rates to reflect market rates at the time the services were rendered, rather than at the time the affidavits were filed. The court believed that it was proper to award fees below those supported by the evidence because the affidavits reflected market rates at a later time which were necessarily greater due to inflation. However, the district court did not take into account the effect of inflation and foregone interest on the attorneys' delayed compensation for fees based upon 1982 and 1983 rates.
 
 
 34
 Civil rights litigation often spans several years, and consequently compensation under Sec. 1988 often occurs long after the relevant services have been rendered. This delay in payment of attorney's fees "obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one." Johnson v. University College of the University of Alabama, 706 F.2d 1205, 1210 (11th Cir.1983) cert. denied, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); accord Murray v. Weinberger, 741 F.2d 1423, 1432-33 (D.C.Cir.1984); New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1152 (2d Cir.1983); Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir.1983). Courts have adopted different approaches to account for the effect of the delay in payment on the value of the fee award. See generally M. Derfner & D. Wolf, 2 Court Awarded Attorney Fees p 16.03 (1984). In Johnson v. University College, for example, the Eleventh Circuit vacated a fee award which was based upon "historical rates, reflecting the reasonable fee at the time the work was performed, apparently without any enhancement for delay in payment." 706 F.2d at 1210. According to that court, "district courts should take into account inflation and interest, ... perhaps by compensating at current, not historical rates," or by adjusting the lodestar by a percentage increase to account for delay. Id. at 1210-11. Accord Murray, 741 F.2d at 1433. As the District of Columbia Circuit has noted, use of current market rates can be appropriate because "current market rates of the relevant legal community may approximate the value today of the historic rates charged at the time when the legal services actually were rendered. Using current market rates to calculate the lodestar may counterbalance the delay in payment as well as simplify the task of the district court." Accord Ramos, 713 F.2d at 555 ("[t]he hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed").
 
 
 35
 Here, the district court awarded fees on the basis of historic rates without accounting in any way for the effect of delay in payment on the value of the fee. Delay necessarily erodes the value of a fee that would have been reasonable if paid at the time the services were rendered. Consequently, an award based upon historic rates which does not take delayed payment into account will not be a fully compensatory fee. We therefore hold that the district court erred in adopting historic rates without considering the effect of delay in payment on the value of the fee. On remand the court should reconsider the reasonableness of the rates in light of these considerations. The court may increase the hourly rates to reflect current market rates, or it may increase the lodestar to counterbalance the effect of inflation and foregone interest on the value of the fee. The particular method of accounting for delay in payment is within the discretion of the district court.
 
 C.
 
 36
 In evaluating the reasonableness of the requested fees in this case, the district court considered relevant Johnson factors.[15] The court then declined to increase the lodestar fee to account for the excellent results obtained. The result in this case, a $35,000 damage award for emotional harm, is certainly quite good, as the district court acknowledged. However, a prevailing attorney is not entitled to an upward adjustment of the lodestar fee simply because he or she did a good job. Under Blum, the attorney must show that an upward adjustment of the presumptively reasonable lodestar fee is needed to accomplish full and fair compensation. Where the Johnson factors are considered in the process of calculating the lodestar fee, the efforts of the attorneys which led to the excellent results, such as time, effort, skill, etc., will have been considered. To then increase the lodestar fee to account for the excellence of the results would, in most cases, result in the "double counting" Blum cautions against. 104 S.Ct. at 1549.
 
 
 37
 In this case the district court properly considered the factors which presumably led to the excellent outcome in evaluating the reasonableness of the hours and rates. The court's recognition of Daly's skill and experience, for example, was a consideration in evaluating the reasonableness of his hourly rate. The burden was on the attorneys to show that the lodestar fee calculated in this manner was not fully compensatory, and that this was one of the "exceptional circumstances" contemplated by Blum in which an increase to account for the results obtained was warranted. We are unable to conclude that the district court erred in finding that the attorneys did not meet that burden in this case.
 
 IV.
 
 38
 The Consent Order provided that the plaintiff was "entitled to an award of reasonable counsel fees, costs and expenses." The district court evaluated the expense request "under the same standards utilized if the case was actually tried, and award[ed] expenses pursuant to 28 U.S.C. Sec. 1920 and Fed.R.Civ.P. 54(d)." The court disallowed expenses for investigative charges, telephone charges, copying charges, postage charges, and attorney travel "because, if the attorneys are adequately compensated, those expenses are absorbed in the overhead and compensated for by the reasonable fee." Consequently, the court reduced the award for costs and expenses by $1,655.42.[16]
 
 
 39
 This approach runs directly contrary to our holding in Wheeler v. Durham City Board of Education, 585 F.2d 618, 623 (4th Cir.1978). In that school desegregation case, we ruled that "[w]here attorneys' fees are expressly authorized by statute ... Rule 54(d) is no longer relevant. Instead, the question is whether the statutory authorization of reasonable attorneys' fees was intended to include the litigation expenses." Id. Wheeler concerned whether expenses were compensable under 20 U.S.C. Sec. 1617 which authorizes "a reasonable attorney's fee as part of the costs." This court concluded that Sec. 1617 contemplated reimbursement for litigation expenses.
 
 
 40
 Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel are integrally related to the work of the attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation as complicated and demanding upon the resources of an attorney's office as that seeking school desegregation. Reimbursement of related litigation expenses would, therefore, plainly further the congressional purpose of encouraging meritorious school desegregation litigation and the related policy of ensuring that those who prevail in such significant social litigation should be fully compensated for their efforts. Indeed, to recount the reasons for including litigation expenses in a fee award is perhaps to state the obvious; for other federal courts have routinely provided for recovery of out-of-pocket expenses in conjunction with fee awards. E.g., Fairley v. Patterson, 493 F.2d 598, 607 n. 17 (5th Cir.1974); Payne v. Travenol Laboratories, Inc., 74 F.R.D. 19 (N.D.Miss.1976); Swann v. Charlotte-Mecklenburg Board of Education, 66 F.R.D. 483 (W.D.N.C.1975); Bradley v. Richmond School Board, 53 F.R.D. 28, 43-44 (E.D.Va.1971).
 
 
 41
 585 F.2d at 623-24.[17] In Dowdell v. City of Apopka, 698 F.2d 1181, 1190 n. 13 (11th Cir.1983), the Eleventh Circuit found that this court's reasoning in Wheeler "applies equally well" to expense awards under Sec. 1988. According to Dowdell,
 
 
 42
 [r]easonable attorneys fees under [Sec. 1988] must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly.
 
 
 43
 Id. at 1190.
 
 
 44
 The difference between the scope of costs taxable under Fed.R.Civ.P. 54(d) and 28 U.S.C. Sec. 1920 and under Sec. 1988 is due to the fact that "these two bodies of law ... are grounded in antithetical policies." Dowdell, 698 F.2d at 1189 n. 12. Rule 54(d) and Sec. 1920 are premised on the traditional "American Rule" that each party to a lawsuit bear its own costs. Id.; see Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247-259, 95 S.Ct. 1612, 1616-1622, 44 L.Ed.2d 141 (1975). Section 1988 was intended as an exception to the American Rule and is premised on the idea of fee shifting. Because meritorious civil rights plaintiffs are "private attorneys general" enforcing important congressional policies, Sec. 1988 is intended to encourage them to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers. Dowdell, 698 F.2d at 1189 n. 12; see S.Rep. No. 94-1011, 94th Cong., 2d Sess. 1-4 (1976), reprinted in 5 U.S.Code Cong. & Ad.News 5908-5911. In keeping with the fee shifting policy behind Sec. 1988, numerous courts have found litigation expenses to be compensable under the statute. See, e.g., Redding v. Fairman, 717 F.2d 1105, 1119 (7th Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); Ramos v. Lamm, 713 F.2d at 559; Thornberry v. Delta Air Lines, Inc., 676 F.2d 1240, 1244-45 (9th Cir.1982),vacated on other grounds, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983); Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624, 642 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980); Wuori v. Concannon, 551 F.Supp. 185, 200 (D.Maine 1982); Population Services International v. Carey, 476 F.Supp. 4, 8 (S.D.N.Y.1979); see also Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 30 (D.C.Cir.1984); cert. denied --- U.S. ----, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985) (litigation expenses may be awarded as part of attorney's fee award under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5(k)); Fairley v. Patterson, 493 F.2d 598, 606 n. 11 (5th Cir.1974) ("Court costs not subsumed under federal statutory provisions normally granting such costs against the adverse party, Fed.R.Civ.P. 54(d) ..., are to be included in the concept of attorneys' fees"); James v. Beaufort County Board of Education, 348 F.Supp. 711, 720 (E.D.N.C.1971), aff'd sub nom. Thompson v. School Board of the City of Newport News, 472 F.2d 177 (4th Cir. 1972) (en banc) (litigation expenses properly awarded in Sec. 1983 suit prior to enactment of Sec. 1988). But see Entertainment Concepts, III, Inc. v. Maciejewski, 514 F.Supp. 1378, 1382 (N.D.Ill.1981) (disallowing "an out-of-state attorney such items as travel, lodging, parking, and long-distance telephone calls [in Sec. 1988 fee award] so as to refrigerate undue enthusiasm for engaging out-of-state counsel"); Keyes v. School District No. 1, 439 F.Supp. 393, 415-17 (D.Col.1977) (neither 42 U.S.C. Sec. 1988 nor 20 U.S.C. Sec. 1617 authorizes an expense award beyond that contemplated by 28 U.S.C. Sec. 1920).
 
 
 45
 The great weight of authority in this circuit and others clearly establishes that a prevailing plaintiff is entitled to compensation for reasonable litigation expenses under Sec. 1988. Consequently, the district court erred as a matter of law in evaluating the expense request in this case under 28 U.S.C. Sec. 1920 and Fed.R.Civ.P. 54(d). Upon remand, the district court should grant compensation for expenses reasonably incurred by the attorneys in preparing the case.[18]V.
 
 
 46
 The attorneys claim that the district court erred in failing to grant additional compensation under the contingency fee agreement with the plaintiff. The agreement provided that Starnes would pay her lawyers 25% of her net recovery. Further, "[c]lient acknowledges that lawyers may, if successful, apply to the court for a further fee award, beyond the contingent fee she agrees to pay." (Emphasis added). The contract consequently contemplated that the attorneys would recover 25% from Starnes and then seek the difference between that amount and a reasonable fee in the form of a fee award. The attorneys have already been awarded more than 25% of the net recovery, therefore the contingency agreement has been satisfied through the court awarded attorney's fee. Once the above mentioned errors in calculation of the fee award have been corrected, the Sec. 1988 fee award in this case will fully compensate counsel. To grant additional compensation in this particular context would constitute a "windfall" which is contrary to the purposes of Sec. 1988.[19] See Blum, 104 S.Ct. at 1548.
 
 VI.
 
 47
 In recognition of the limited role of appellate courts in evaluating the reasonableness of fee awards under Sec. 1988, see Hensley, 461 U.S. at 437, 442, 103 S.Ct. at 1941, 1944, we do not remand this case lightly. Where an attorney's fee appeal simply concerns questions of fact or of the district court's proper exercise of its broad discretion, a remand will seldom be warranted. In this case, however, the district court committed errors of law which undermine our confidence in what would otherwise constitute a reasonable attorney's fee award. Just as this court has a duty to affirm an award which falls within the district court's broad discretion, we have a duty to remand a case when the district court applies the wrong standards so that the fee award is inadequate as a matter of law. In this case, the district court erred in calculating the fee based upon historic rates without accounting for the effect of delay in payment on the value of the fee, and in disallowing reasonable litigation expenses.[20] In all other respects, we find the award to be a proper exercise of the court's discretion. Consequently, we affirm the district court's order in part and vacate in part. Upon remand the district court should consider whether delay in payment should be accounted for through the use of current, not historic, market rates, through an increase of the lodestar fee, or through some other method. The court should also order compensation for reasonable litigation expenses.
 
 
 48
 Accordingly, this case is remanded to the district court for further proceedings.
 
 
 49
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 50
 KELLAM, District Judge, dissenting.
 
 
 51
 The majority opinion finds from the record that the trial court "erred in calculating the fee [hourly rate of fee award] based upon historic rates without accounting for the effect of delay in payment on the value of the fee, and in disallowing reasonable litigation expenses." [P. 1085] That is, the majority opinion concludes that the trial court applied market hourly rates for legal services at the 1982-1983 level--the time when the services were performed--when it should have applied the market rate at the 1984 level, the year when the services were being established, and that the trial court erroneously disallowed certain items of expenses claimed. I respectfully disagree.
 
 
 52
 I agree with the majority that "reasonable fees" are to be calculated according to prevailing market rates in the community. Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The amount of fee to be awarded must be determined on the facts of each case, and the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensely v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). See also Webb v. Board of Education of Dyer County, --- U.S. ----, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985). In Blum, supra, n. 11, the Court pointed out that "the critical inquiry in determining reasonableness is now recognized as the appropriate hourly rate." 104 S.Ct. at 1547. The appellant has the burden "to justify the reasonableness of the requested rate or rates," and to "inform and assist the Court ... to produce satisfactory evidence" that the rates are those prevailing in the community for similar services. A rate determined in this way is normally deemed to be reasonable." Id.
 
 
 53
 Where I differ with the majority is in its finding that the basis of "the Court's reduction in the requested rates was its belief that it was not proper to award fees based upon current market rates. Rather, the Court determined that fees should be awarded based upon the rates at the time the work was performed." [P. 1075]
 
 
 54
 To support this conclusion, the majority opinion says:
 
 
 55
 However, in assessing the weight to be accorded the supporting affidavits, the Court found it to be 'significant that most of the hours for which Mr. Daly is claiming compensation were in 1982 and 1983, whereas, the affidavits he has filed are based on 1984 hourly rates.' [P. 1080]
 
 
 56
 The majority opinion infers from the above statement that the trial court applied the 1982-1983 hourly market rates for services, rather than the 1984 hourly market rate, the time when the hourly rate was being established. It justifies such an inference from its conclusion that "the rates adopted by the district court were lower than the lowest rate in each city supported by the evidence before the Court. It is clear that the Court intended the rates to reflect market rates at the time the services were rendered, rather than at the time the affidavits were filed." [P. 1080] I disagree that this inference is a proper one to be drawn from the district court's opinion. But even if it is a proper one, it is not the only one. Too, I disagree that the evidence establishes that the hourly rates adopted by the trial judge were lower than the lowest market rate in each city supported by the evidence before the Court. The trial court's opinion sets forth:
 
 
 57
 Based upon the affidavits submitted by the parties, legal fees now range from a low of $75.00 per hour to a high [the highest] of $150.00 per hour for in-court work.[1] Having come on the bench approximately 2- 1/2 years ago when the highest range of fees in this locale were approximately $75.00 per hour, I find it difficult to determine that a fee of $90.00 per hour is not the figure which would be considered a reasonable fee for out-of-court work in this area for an attorney of Mr. Daly's competence. It is significant that most of the hours for which Mr. Daly is claiming compensation were in 1982 and 1983, whereas the affidavits he has filed are based on 1984 hourly rates.
 
 
 58
 The trial court found that upon the affidavits submitted, legal fees now range from $75.00 per hour to $150.00 per hour for in-court time, as opposed to out-of-court time. Utilizing his personal knowledge, he stated that 2- 1/2 years earlier, "the highest range of fees in this locale were approximately $75.00 per hour. Applying those facts to the Court's finding and its allowance of $90.00 per hour in 1984--the time when fees were being assessed--clearly indicates to me the Court was allowing the market rate for 1984.
 
 
 59
 Actually, appellants raised no issue on appeal of any failure of the trial court to apply 1984 hourly rates to the fees allowed, or any failure to make any allowance for the delay in payment of the value of the services rendered. What appellants do complain of is the Court's failure to consider an adjustment of the lodestar fee to account for the excellent result obtained. But that is not what the majority deals with. Since the issue was not raised, it should not be dealt with on appeal. In any event, the hourly rates allowed were within the range of the hourly rates for similar services for 1984.[2]
 
 
 60
 As to the disallowance of items for costs, I agree that a party litigant entitled to recover his costs is entitled to recover reasonable items and reasonable sums. This was not a difficult case. It could have been brought at common law, as well as under Sec. 1983 and in state courts. Civil rights cases are no longer novel or unusual. They require no more expertise than the usual civil case. The average lawyer in practice today is filing and prosecuting civil rights cases. Within the jurisdiction of each division of the federal courts there are a substantial number of lawyers possessing the required skills to handle even the most complicated civil rights cases.
 
 
 61
 In Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir.1983), the opinion related that for 1982, more than one-sixth of the civil cases filed in federal courts were civil rights cases, and that more than 30% of the cases appealed to the Courts of Appeals were civil rights cases. The annual report of the Director of the Administrative Office of the United States Courts shows that for 1984 the percentage of private civil rights cases filed in the district courts and appealed to the Court of Appeals continues to be about the same percentage. The figures are approximately the same for the Fourth Circuit, in both the District Court and the Court of Appeals. [See p. 245-246, 254, 258 of the report]. Too, such cases can be, and are brought in the state courts. Because the law applicable to such cases has become well established, the time required to investigate, prepare and prosecute such cases is much less demanding. Hence, the costs and expenses reasonably necessary to be incurred are reduced. The items of cost and expense allowable are those "reasonably" incurred. The trial judge is to exercise his discretion in determining whether the sums claimed are reasonable, and were reasonably necessary and are properly documented. The trial court made an allowance of $4,028.10 out of a total request for $5,683.52. Among the items disallowed were $512.00 for out-of-pocket expenses for legal research, $135.21 for long distance telephone calls, $55.01 for postage, $351.08 copying charge, $219.60 for mileage and travel. The Court did allow $2,833.10 for depositions, copies and witness attendance fees and other items. The trial judge was exercising his judgment in eliminating any item not reasonably necessary. The burden was on applicants to properly justify each item of cost and expense, and show such item was applicable to this litigation. Each counsel included in his billing items for research, but in addition, billed for $512.00 for out-of-pocket research. Under the facts of this case the Court was justified in disallowing such an item, as well as the other items. It was appellant's duty to show when these items were incurred. The Court could then have dealt with them in a more positive way. For instance, if they were incurred long before the suit was filed, they are not necessarily recoverable. Webb v. Board of Education of Dyer County, held that compensation under Sec. 1988--which includes attorney's fees, costs and expenses is that "reasonably expended on the litigation." 105 S.Ct. at 1928. It held that time spent in administrative proceedings for items not a part of the litigation, and time spent during periods before the litigation was filed were not reasonable under Sec. 1988. In the statement submitted by Mr. Street there was a request for allowance of fee for 78 different occasions prior to the time of filing this suit. Included were items for numerous telephone conversations with client, district attorney, witnesses and others, trips to plaintiff's home, trips to the sheriff and district attorney's office, trip to the scene of the occurrence, six trips to court, three trips to Charlotte, and numerous conversations and conferences, all of which were before the suit was actually filed. There is no way the trial judge could have determined what part of the telephone, travel or other items charged as expenses were chargeable as "reasonably expended on litigation." If Mr. Street was not entitled to be compensated for the full number of hours charged--and the court found he was not--certainly he would not be entitled to costs charged for those hours. As a further indication of the unreasonableness of the account submitted, the account of Mr. Street shows that he had 25 separate conferences with his client before the suit was filed and 49 conferences with her after the suit was filed. These conferences ranged from twelve minutes to two hours. He charged for thirty telephone conferences with his client and her family before the suit was filed and some thirty-nine after the suit was filed, ranging from six minutes to forty-eight minutes. There is no showing of what the telephone charges are for, or when incurred. The same applies to the other charges for travel, copying, etc. The trial judge pointed out in his opinion that he counted some 84 different charges for "File Review" on different days and in some instances, on consecutive days, twenty-two of which were before this suit was filed. Strange as it may seem, one of the charges for "File Review" was on the third day after his first conference with his client.
 
 
 62
 In reducing the sums claimed for services and disallowing items of costs, the trial court pointed out that even with the reduction and disallowance the "costs which have resulted from this litigation are all out of proportion to the factual situation involved," and the "fees requested here are a small example of an attempt to overcharge." [Opinion--JA 193-194]
 
 
 63
 In view of the lack of proper identification and time for the expenses listed, and the unreasonableness of the account, the trial court properly exercised his judgment in denying such items. I would affirm on the opinion of the trial judge.
 
 
 
 [2]
 The twelve factors identified in Johnson which should guide a district court's discretion in calculating a fee award are as follows:
 (1) the time and labor required;
 (2) the novelty and difficulty of the questions;
 (3) the skill requisite to properly perform the legal service;
 (4) the preclusion of other employment by the attorney due to acceptance of the case;
 (5) the customary fee;
 (6) whether the fee is fixed or contingent;
 (7) time limitations imposed by the client or the circumstances;
 (8) the amount involved and the results obtained;
 (9) the experience, reputation, and ability of the attorneys;
 (10) the "undesirability" of the case;
 (11) the nature and length of the professional relationship with the client; and
 (12) awards in similar cases.
 488 F.2d at 717-19. The Johnson approach was endorsed by Congress when it enacted Sec. 1988; S.Rep. No. 95-1011, 94th Cong., 2d Sess. 6 (1976), reprinted in 5 U.S.Code Cong. & Ad.News 5908, 5913 (1976), and approved of by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983).
 In considering the Johnson factors, the district court did not engage in the two step process adopted by this court in Anderson v. Morris, 658 F.2d 246, 249 (4th Cir.1981), overruled in part on other grounds, Bernstein by Bernstein v. Menard, 728 F.2d 252, 253 n. 1 (4th Cir.1984), whereby the court first determines a "lodestar" fee based upon reasonable rates and hours, and then adjusts the fee upward to account for relevant Johnson factors. See e.g. Willie M. By Singer v. Hunt, 564 F.Supp. 363, 365-68 (W.D.N.C.1983), aff'd 732 F.2d 383 (4th Cir.1984). Rather, the court considered all factors it determined were relevant at one time. Because, as discussed infra at 1077-1078, the Anderson approach must be modified under Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the court's departure from Anderson was not in error.
 
 
 [3]
 As discussed infra n. 15, the district court erred in its application of this Johnson factor
 
 
 [4]
 See supra n. 2
 
 
 [5]
 Johnson factor one is the "time and labor required." Factor five is the "customary fee." 488 F.2d at 717-18
 
 
 [6]
 The remaining Johnson factors, numbers two through four and six through twelve, appear in footnote 2, supra
 
 
 [7]
 While the court suggested that consideration of the novelty and complexity of the lawsuit is only appropriate in determining the initial lodestar figure, not in adjusting that figure, the court recognized that there might be circumstances in which quality of representation would be properly considered in adjusting the lodestar fee. Quality of representation "may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' " 104 S.Ct. at 1549 (citation omitted)
 
 
 [8]
 Because the district court's finding that the litigation was "risky" was not supported by the record, the Supreme Court declined to consider the question of "whether the risk of not being the prevailing party in a Sec. 1983 case, and therefore not being entitled to an award of attorney's fees from one's adversary, may ever justify an upward fee adjustment." 104 S.Ct. at 1550 n. 17
 
 
 [9]
 In this case we need not consider whether other Johnson factors, such as contingency, can provide an appropriate basis for increasing the lodestar fee
 
 
 [10]
 As Justice Brennan put it, "appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the fee" "must be one of the least socially productive types of litigation imaginable." Hensley, 461 U.S. at 442, 103 S.Ct. at 1944 (Brennan, J., concurring in part and dissenting in part). This is particularly true when litigants challenge a district court's factual findings. As the Supreme Court recently reaffirmed in Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the standard of appellate review of factual findings under the clearly erroneous standard is very restricted. See also Gilbert v. Scratch 'N Smell, Inc., 756 F.2d 320, 320-21 (4th Cir.1985)
 
 
 [11]
 Ballard concerned attorney's fees in black lung and social security benefits cases under 30 U.S.C. Secs. 921 and 922(a)(1), and 42 U.S.C. Secs. 416 (i) and 423
 
 
 [12]
 We do not intend to infer that minutely detailed records are required to support a fee request. There may be other circumstances, perhaps involving complex and protracted litigation, in which a petition for fees requesting compensation for over one hundred hours of client conferences would be proper notwithstanding the failure to specify the substance or purpose of each conference. We only hold that the affidavits in this case provide no basis for this court to conclude that the district court's factual finding is in error
 
 
 [13]
 The $150 per hour figure was specifically for in-court work. The affidavits from Gastonia attorneys also primarily concerned in-court time. The district court did not err in refusing to consider the higher in-court fees because the compensable hours in this case are almost exclusively for out-of-court time
 
 
 [14]
 Likewise, Street sought compensation for hours largely spent in 1982 and 1983. The Gastonia affidavits were based upon current rates in March 1984, the time they were filed
 
 
 [15]
 The district court incorrectly applied the Johnson factor concerning the extent to which the case precluded other employment. In finding that this case did not result in the preclusion of other employment, the court noted that "[i]f anything, this case, as with all of Mr. Daly's cases of this type, increased his chances of other employment." The analysis engaged in by the court on this point was consequently concerned with the effect of this case on the attorneys' reputations, not the effect of the case on their time. This approach collapsed this Johnson factor with the question of the "undesirability" of the case. See Johnson, 488 F.2d at 718-19; see also Johnson v. University College, 706 F.2d at 1210 (case not undesirable because it might generate other business for attorneys). A proper analysis of the question of whether other employment is precluded should consider the extent to which time spent on the case in question precludes the attorneys from engaging in other gainful employment. This Johnson factor recognizes that the effect of the case on an attorney's ability to do other potentially lucrative work may in some cases make an upward adjustment of the hourly rate necessary to accomplish full compensation. On remand the district court should consider whether this case precluded Daly and Street from taking other employment due to the time commitment required. If the court finds that the case has precluded the attorneys from engaging in other employment, the court should consider whether this factor is already reflected in the hourly rate or whether it necessitates an upward adjustment of the hourly rate to fully compensate the attorneys
 While the district court erred, as a matter of law, in its application of this Johnson factor, an error of this sort will not usually be sufficient to support a remand. Attorney's fee awards must be fair and must fully compensate prevailing attorneys. However, fee awards need not reach technical perfection in order to fall within the realm of a district court's discretion in determining a reasonable fee. "Paragraph-by-paragraph scrutiny of the explanation for specific exercises of the district court's broad discretion under Sec. 1988 serves no productive purpose, vindicates no one's civil rights, and exacerbates the myriad problems of crowded appellate dockets." Hensley, 461 U.S. at 454-55, 103 S.Ct. at 1950-51 (Brennan, J., concurring in part and dissenting in part). In this case we find that other errors in calculating the proper fee necessitate a remand. Since the district court must consider the propriety of the fee award for other reasons, it should also consider whether this less significant error affects its evaluation of the reasonableness of the rates requested.
 
 
 [16]
 There is no evidence in the record to support the district court's assumption that the litigation expenses in this case were part of normal "overhead" and consequently were factored into the attorneys' requested fees
 
 
 [17]
 The relevant language of Sec. 1617 and Sec. 1988 is identical so that, absent contrary legislative history, Wheeler compels allowance of litigation expenses under Sec. 1988. The one direct reference to expenses in the legislative history of Sec. 1988 is the comment by Representative Drinan, a member of the House Judiciary Committee, that "the phrase 'attorney's fee' would include ... all necessary expenses incurred in furnishing effective and competent representation." 122 Cong.Rec. 35,123 (1976)
 In parsing the legislative history of Sec. 1988, the Supreme Court has carefully scrutinized the cases cited with approval in the Senate Report. See Blum, 104 S.Ct. at 1546-47; Hensley, 461 U.S. at 430-31, 103 S.Ct. at 1937-38. Of the three cases endorsed as having "correctly applied" the "appropriate standards" governing attorneys fees, S.Rep. No. 94-1011, 94th Cong., 2d Sess., 6 (1976), reprinted in 5 U.S.Code Cong. & Ad.News 5913 (1976), Swann v. Charlotte-Mecklenburg Bd. of Ed., 66 F.R.D. 483 (W.D.N.C.1975), expressly granted reimbursement for litigation expenses in addition to a fully compensatory attorney's fee award. The other two cases cited with approval by the Senate as having correctly calculated fee awards do not consider whether or not litigation expenses should be compensated. Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974), aff'd 550 F.2d 464 (9th Cir.1977), rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); Davis v. County of Los Angeles, 8 E.P.D. p 9444 (C.D.Cal.1974). We cannot assume that Congress would embrace Swann as a model if that court had over-compensated the attorneys through the allowance of an expense award. Cf. Blum, 104 S.Ct. at 1547. Consequently, the legislative history of Sec. 1988 indicates that expenses may be awarded to prevailing parties under the statute.
 
 
 [18]
 An expense award, like an attorney's fee, must adequately compensate counsel without resulting in a windfall. Prevailing attorneys must exercise "billing judgment," for expenses "not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Hensley, 461 U.S. at 434, 103 S.Ct. at 1940 (quoting Copeland, 641 F.2d at 891 (emphasis in original)). An attorney's practices in billing clients for expenses may be relevant to the question of whether compensation for litigation expenses is proper in addition to attorney's fees in a particular case. It is customary for attorneys to bill clients for duplicating expenses, attorney travel and other necessary litigation expenses in addition to a regular hourly rate. However, there may be circumstances in which an attorney's customary hourly rate is intended to cover litigation expenses. In such a case, reimbursement for expenses in addition to a reasonable fee would constitute improper double compensation
 
 
 [19]
 Because we find that the contingency agreement in this case has been fully satisfied, we decline to consider the circumstances in which contingency agreements might be enforceable notwithstanding the grant of a court awarded attorney's fee
 
 
 [20]
 As discussed supra n. 15, the court also committed a less significant error of law through its improper interpretation of the Johnson factor concerning the preclusion of other employment. On remand the court should consider whether this factor, properly applied, requires an increase in the hourly rates previously awarded
 
 
 [1]
 Affidavits and stipulations in the record show that five attorneys said the current rates (1984) in Gastonia and Charlotte ranged from $65.00 to $100.00 per hour for in-court services. The allowances were $70.00 to Street and $90.00 to Daly for out-of-court services
 
 
 [2]
 By way of comment only, it seems to me incorrect to make allowance for delay in assessing or paying the sum awarded using the market rate at time of allowance and payment, rather than the rate when the services were performed. I am aware some courts have so held. Unless specifically provided by statute or contract, compensation for delay in payment is generally by allowance of interest. It seems to me that one required to pay the hourly rate for services should be charged the hourly rate at the time the services were performed, plus interest for delay in payment. Assume the hourly rate for labor is $10.00 per hour when the services are rendered, but $20.00 per hour at the time ordered paid. Such an increase would constitute a windfall, rather than just compensation or, assume the rate was $10.00 when rendered and $8.00 when ordered paid