**Rebecca THOMAS, Plaintiff,**

v.

**COOPER INDUSTRIES, INC., and Plumb—The Cooper Group, Defendants.**

**No. C–C–84–460–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

May 29, 1986.

George Daly, Charlotte, N.C., for plaintiff.

Frank B. Aycock, III, Charlotte, N.C. and Curtis L. Mack, Atlanta, Ga., for defendants.

## ORDER ALLOWING
## ATTORNEYS' FEES

McMILLAN, District Judge.

On this date, the court is entering a final judgment for the plaintiff in this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff's attorneys have filed a petition for an award of attorneys' fees and costs. As the prevailing party, plaintiff is entitled under 42 U.S.C. § 2000e–5(k) to a reasonable fee and costs.

■ Calculating a reasonable fee is a two step process. First, the court determines the base, or lodestar, fee. Then the court determines whether this amount should be adjusted upward or downward due to special circumstances in the case.

In determining the reasonable fee, courts in this circuit are to consider the twelve factors first enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974):

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 & n. 28 (4th Cir.), *cert. denied* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

Previously courts in this circuit were to consider only *Johnson* factors one and five in setting the lodestar fee. The remaining factors were to be considered in determining whether to adjust the lodestar fee up or down. *Anderson v. Morris,* 658 F.2d 246 (4th Cir.1981).

■ The Fourth Circuit has recently ruled, however, that all twelve *Johnson* factors must be considered in setting the lodestar amount. *Daly v. Hill,* 790 F.2d 1071, 1078 (4th Cir.1986). The Court of Appeals read *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), to say that "the lodestar fee is now the focus of the entire *Johnson* analysis in most cases." Apparently, after considering all twelve *Johnson* factors in setting the lodestar fee, the court is to reconsider them as necessary on the question of adjusting the lodestar fee upward or downward.

In keeping with *Daly v. Hill,* the court will consider all the *Johnson* factors, though in a different order, before setting the lodestar fee. After that, the court will consider whether the lodestar amount should be adjusted upward or downward. Finally, the court will consider what expenses plaintiff's attorneys are entitled to.

### I. *The Lodestar Fee.*

■ Plaintiff's primary attorney, Mr. George Daly, has requested a lodestar fee of $69,104 for 431.9 hours of work on this case. Mr. John Gresham, who entered the case after it became clear that the fee petition would be a major battle, has requested a lodestar fee of $4,556.25 for 36.-45 hours of labor.

### A. *The Novelty and Difficulty of the Questions.*

The legal questions were not novel or difficult. The factual questions were not novel but were complicated and difficult to flush out.

This factor does not favor a particularly high or low lodestar fee.

### B. *The Skill Requisite to Perform the Legal Service Properly.*

Employment discrimination cases require considerable skill because they generally are factually complicated and require extensive discovery. These cases are, for instance, generally more complicated and difficult than routine automobile accident or products liability cases.

In this particular case, considerable skill was required to find, from among all the documents produced, those documents that would disprove defendants' defenses and undermine the credibility of defendants' witnesses.

Mr. Daly demonstrated such skill. Furthermore, he presented plaintiff's case in a marvelously orderly, efficient, and easy-to-follow manner. On cross-examination of defendants' witnesses, he effectively demonstrated the subtle and not-so-subtle inconsistencies in the testimony of those witnesses, thus undermining the credibility of many.

This factor weighs in favor of a high lodestar fee.

### C. *The Preclusion of Other Employment Due to Acceptance of the Case.*

Naturally, Mr. Daly was precluded from accepting some cases due to his acceptance of this case. This factor does not indicate that the lodestar fee should be higher or lower than normal. However, this factor is one of the reasons why, as will be discussed below, the court declines to discount the rates allowed Mr. Daly and Mr. Gresham for their time.

### D. *Whether the Fee is Fixed or Contingent.*

The fee in this case was contingent on success. Had plaintiff lost, Mr. Daly would have wasted most of the 350 or more hours that he spent on this case through trial. Since plaintiff won, Mr. Daly should recover a fee that compensates him for the risk he took.

Thus, either the lodestar fee itself should be high, or the fee should, in the second step of the process of determining a reasonable fee, be adjusted upward. The court will follow the latter course.

### E. *Time Limitations Imposed by the Client or the Circumstances.*

There is no evidence that the time limitations in this case were either strict or lax, or that the case was in any way unusual in this respect.

This factor favors neither a high nor a low lodestar fee.

### F. *The Amount Involved and the Results Obtained.*

The court previously found that plaintiff's monetary damages exceeded $50,000. That included back pay. In addition, plaintiff is entitled to more than $10,000 in interest, to front pay, and to reinstatement. Much was involved.

The results obtained by Mr. Daly for the plaintiff were excellent. Her victory was total. Mr. Daly is entitled to a fully compensatory fee. *See Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

### G. *The Experience, Reputation, and Ability of the Attorneys.*

Mr. Daly graduated from law school in 1961 and has practiced law in North Carolina since 1966. He has tried scores of cases in federal and state courts and argued approximately fifty appeals. This court knows him well. He has an excellent and well-deserved reputation, particularly in employment discrimination cases. His ability is outstanding.

Mr. Gresham was a law clerk to this court for a year before he began practice in 1976. He has considerable experience in litigating employment discrimination cases and has appeared before this court many times. He is a lawyer of high ability.

## H.  *The Undesirability of the Case.*

It is difficult to rate this factor. Employment discrimination cases are not particularly popular among lawyers. They are factually complicated and difficult to prove. A great deal of discovery is required, and plaintiffs are usually poor, or at least not able to pay the lawyer "up front." A lawyer must invest in his client's case. The lawyer recovers virtually nothing unless the plaintiff wins. Even then, the lawyer frequently faces an enervating, destructive battle over fees. As a result, time spent by the lawyer is compensated, if at all, only years later.

On the other hand, in this particular case the plaintiff was very strong. She presented her case well and was a forceful and believable witness.

The court finds that this case was not particularly undesirable *for an employment discrimination case.* In general, however, employment discrimination cases are undesirable. This factor favors a high lodestar fee.

## I.  *The Nature and Length of the Professional Relationship with the Client.*

Mr. Daly has had no other professional relationship with the plaintiff.

This factor favors neither a high nor a low lodestar fee.

## J.  *Awards in Similar Cases.*

This court recently awarded a lodestar fee of $150 per hour in an age discrimination case. *Taylor v. Home Insurance*, C–C–82–98–M (W.D.N.C., Order of May 23, 1986). That award in fact was to Mr. Daly. Two years before, the court awarded Mr. Daly a lodestar fee of $135 per hour in the same case (Order of May 23, 1984).

This factor favors a substantial lodestar fee.

## K.  *The Time and Effort Required.*

Mr. Daly has submitted affidavits showing that he spent 431.9 hours on this case. Mr. Gresham has submitted an affidavit showing that he spent 36.45 hours on this case.

The defendants' lawyers spent fifteen hundred sixteen (1516) hours (more than three times as much as plaintiff's lawyers) on this case! Nevertheless, defendants argue that the hours spent by Mr. Daly and Mr. Gresham are excessive! They challenge, for the listed reasons, the following time:

a.  Time spent on more than fifty short phone calls to plaintiff to discuss discovery matters, etc.

   Defendants say that this time has not been adequately substantiated and that "office personnel" could probably have made many of the calls.

   Defendants ask that Mr. Daly either not be compensated at all for this time or that he be compensated at a lower rate.

b.  Time spent responding to a query from the local newspaper (part of 18 minutes).

   Defendants argue that this is not relevant to this litigation and therefore is not compensable.

c.  Time spent on August 15, 1984, reviewing an article in *Fortune* magazine about defendants (24 minutes).

   Defendants say this did not require the special skill and expertise of Mr. Daly and therefore should be discounted.

d.  Time spent talking to Mr. Lawrence Ashe on August 13, 1985 (part of 18 minutes).

   Defendants say the relevance of this is not shown, and therefore that it should not be compensated.

e.  Time spent talking to a psychological consultant on January 3 and 7, 1986 (part of 3.8 hours).

   Defendants question the relevance of this post-trial consultation and ask that it not be compensated.

f.  Time spent traveling to Monroe, North Carolina, and Houston, Texas, where Mr. Daly reviewed documents (10.3 hours).

Defendants assert that the compensation for this time should not be at the full rate.

g. Time spent on September 15, 1985, drafting a closing argument (part of 11.4 hours).

Defendants argue that since this was a non-jury trial, this time cannot have been well-spent and therefore should not be compensated.

h. Time spent on the "losing aspects" of the fee petition (15.5 hours).

Defendants argue that the time Mr. Daly spent opposing their discovery requests on the fee question should not be compensated because he did not win those discovery battles.

i. Time spent on the petition for fees (45.9 hours by Mr. Daly and 36.45 hours by Mr. Gresham).

Defendants argue that this time should be discounted because it is excessive. Defendants assert that Mr. Daly and Mr. Gresham spent so much time on the fee petition only because Mr. Daly has a "poor record keeping system." Defendants argue further that the factors used by Mr. Daly to justify a high award for the time through trial (complicated proof, his experience in employment discrimination cases, the amount involved and the results obtained, and the contingent nature of the case) do not exist with respect to the time spent on the fee petition.

The court finds that items (a), (b), (c), (f) and (g) are compensable time. Making telephone calls to plaintiff, responding to calls from the press, reading background material on defendants, traveling to find and read possibly relevant documents, and preparing a summation of the evidence are obviously necessary to proper preparation for trial. Item (h) is also compensable because, the court finds, plaintiff's opposition to defendants' discovery requests on fees was justified. Defendants' discovery requests on the fee question were overbroad and tended to intimidate. The court allowed defendant more discovery than probably was warranted. Plaintiff's attorneys should not be penalized because the court did not agree with *all* their objections to defendants' requests. Plaintiff's objections to discovery, even though some discovery was allowed, do not constitute non-compensable "losing aspects" of this litigation under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

On the other hand, the court finds that the conversations with Mr. Ashe and with the psychological consultant (items (d) and (e)) have not been shown to be necessary. The court will reduce Mr. Daly's hours by 1.5 to correct for the inclusion of this time.

The court further finds that none of the time should be discounted. Defendants may be suggesting that speaking to the plaintiff about discovery or reading background material about defendants does not require a lawyer's special expertise. However, it is apparent that the plaintiff was extremely involved in this litigation. Her counsel probably had no idea what questions she would have for him about the discovery matters discussed in those phone calls. He may reasonably have thought that he should make the calls himself. As to the *Fortune* article, it was Mr. Daly who had to understand the defendants in order to be able to overcome their defenses. It was he, therefore, who had to read up on them. As to the time counsel spent on planes, that was time when he was not working for other clients; and air travel is the fastest transportation now available.

With regard to the fee petition, it is obvious that, contrary to defendants' assertion, Mr. Daly spent so much time on the fee petition and called in Mr. Gresham only because defendants decided to play "hard ball" over fees. Indeed, the affidavit filed by Mr. Daly with his first fee petition (filed on January 15, 1986) shows that he only spent part of 4.4 hours on that fee petition. The remaining time on the fee petitions

(41.5 hours by Mr. Daly and the entire 36.45 hours by Mr. Gresham) was spent only because defendants made a "second major litigation" over fees.

Defendants' other arguments to justify discounting the time spent *on the fee petitions*—that recovery was not contingent at that point, etc.—are largely correct. The court will not on these bases reduce the lodestar fee. These arguments may, however, justify differentiating (on the later question whether the lodestar fee should be adjusted upward or downward) between the time before, and the time after December 31, 1985, when the court issued its Memorandum of Decision (627 F.Supp. 655 (as revised)).

On the question of discounting Mr. Daly's time, it is worth noting that he a solo practitioner. Unlike the defendants' lawyers, he cannot delegate matters to lesser-paid employees. It would be improper to penalize him for being a solo practitioner by discounting his time on certain matters that might, in different circumstances, be performed by "office personnel."

Finally, there is a huge disparity between the time spent by Mr. Daly (430.4 hours) and the far greater amount of time (1516 hours) spent by defendants' lawyers. Mr. Daly, compared with defendants' lawyers, is obviously very efficient.

### L. *The Customary Fee.*

Mr. Daly seeks compensation at the rate of $160.00 per hour. Mr. Gresham seeks $125.00 per hour. Defendants vigorously challenge these proposed rates. They assert that Mr. Daly should receive no more than $100.00 per hour for out-of-court work and $120.00 per hour for in-court work, and that Mr. Gresham should receive proportionately less.

The fees charged by Mr. Daly in the past have been the subject of extensive discovery by defendants. The evidence produced shows that Mr. Daly has charged fee-paying clients anywhere from $50.00 to $150.00 per hour for services from 1983 to 1986. Several clients have been billed at $140.00 and $150.00 per hour. For his present fee-paying clients, it appears, as he asserts, that his "normal" rate is $130.00 per hour.

Among the fees awarded to Mr. Daly by courts, this court recently awarded him a fee of $150 per hour and, exactly two years ago, in the same case, awarded him a fee of $135 per hour. *Taylor v. Home Insurance Co.*, C-C-82-98-M (Orders of May 23, 1986, and May 23, 1984).

As additional evidence on this point, plaintiff has submitted affidavits by two prominent Charlotte attorneys, William K. Diehl, Jr., and Charles V. Tompkins. Mr. Diehl is the senior trial attorney for James, McElroy & Diehl, P.A. He has been practicing law since 1969. He states that his firm is generally a "plaintiff's" firm. His own rates from November, 1983, through January, 1986, were $125 per hour for out-of-court time and $150 per hour for in-court time. These rates applied to all types of litigation in which he was being paid on an hourly basis—civil business litigation, family law, and criminal defense. He also frequently charges an initial retainer fee of between $1,000 and $5,000. Mr. Diehl indicates that the litigators under him in his firm, whose experience varies from eight to twelve years, charge between $75 and $100 per hour.

Mr. Diehl's most spectacular recent case was the representation of the Bhagwan Shree Rajneesh, who was deported from Charlotte but, thanks to Mr. Diehl, departed this continent under much happier auspices than had been ordained for him.

Mr. Tompkins is one of the senior trial attorneys with Kennedy, Covington, Lobdell & Hickman. He has been practicing law since 1961; his education and experience most nearly resemble that of Mr. Daly. For general corporate litigation he charges $145 per hour. For medical malpractice defense, which he has been doing

only for a few years, he charges $103 per hour. As to his law firm, where litigation is primarily on the defense side, the lawyers with more than fourteen years of experience, as of February 2, 1985, charge $150 per hour. Lawyers with from ten to fourteen years experience charge $125 to $141 per hour.

Defendants submitted an opposing affidavit. Mr. Henry W. Underhill, Jr., an attorney for the City of Charlotte, states that since June of 1985 the city has been paying Mr. William E. Underwood, Jr., who is with the law firm of Underwood, Kinsey & Warren and who has been practicing law since 1967, at the rate of $110 per hour in litigation concerning aircraft noise at the local airport. Further, the city has, since September, 1985, been paying Mr. Jeffrey J. Davis who is with the firm of Moore, Van Allen, Allen & Thigpen and who, like Mr. Gresham, has been practicing since 1976, at the rate of $125 per hour in construction litigation.

The rates charged by defendants' lawyers have also surfaced. None of these lawyers charged more than $85 per hour. Of course, their fee was not dependent on success, and, as already noted, *they spent more than three times as much time on this case as Mr. Daly.*

The court finds that the customary fee for litigation of this sort for a lawyer with Mr. Daly's credentials and capacity is $150 per hour. For a lawyer with Mr. Gresham's experience a customary fee is $125 per hour. The court declines to differentiate between in-court and out-of-court work.

Based on the foregoing, the court finds that Mr. Daly should be compensated at the rate of $150 per hour for 430.4 hours, and Mr. Gresham should be compensated at the rate of $125 per hour for 36.45 hours:

George Daly

430.4 hours @ $150 per hour ...........$64,560.00

John Gresham

36.45 hours @ $125 per hour ........... $4,556.25.

## II. *Adjustments to the Lodestar Fee.*

The court finds preliminarily that no factors suggest that the lodestar fee should be reduced.

Mr. Daly and Mr. Gresham ask that the lodestar fee be increased by twenty-five percent because (i) the case was contingent; (ii) the case was undesirable; and (iii) similar cases have been increased by this amount or more.

Factor (ii) has already been considered in setting the lodestar fee. The court does not find that factor (iii) in this case independently justifies increasing the lodestar fee. It remains therefore to determine whether the fee should be adjusted upward because the case was contingent.

On the question whether the contingent nature of payment justifies a bonus in the fee, Mr. Gresham and Mr. Daly cite the case of *Wildman v. Lerner Stores, Corp.,* 771 F.2d 605 (1st Cir.1985). In *Wildman,* where fees were being sought under 42 U.S.C. § 1988, the First Circuit addressed the question whether, after *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), an attorney's fee award could be adjusted upward simply because the case had been taken on a contingent basis. The court noted that *four of the six circuits that had considered the question had held that such an increase was appropriate.* 771 F.2d at 611 (citing *LaDuke v. Nelson,* 762 F.2d 1318, 1332–33 (9th Cir. 1985) (fees under the Equal Access to Justice Act); *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 762 F.2d 272, 282 (3d Cir.1985) (under the fee provision of the Clean Air Act); *Sierra Club v. Clark,* 755 F.2d 608, 620 (8th Cir. 1985) (under the fee provision of the Endangered Species Act); *Jones v. Central Soya Company, Inc.,* 748 F.2d 586, 591 (11th Cir.1984) (fees under the Age Discrimination in Employment Act)). The other two circuits had held that such an increase was only appropriate if the case or the success was exceptional. *See McKinnon v. City of Berwyn,* 750 F.2d 1383, 1392

(7th Cir.1984); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 28–29 (D.C.Cir.1984).

The First Circuit in *Wildman* joined the majority and held that a lodestar fee could be increased even without other reasons if the case had been contingent. The court wrote:

"adjustment of the lodestar figure, after examining the particular risks assumed by an attorney in a particular case, may be necessary in order to provide the 'reasonable attorney fee' envisioned by Congress...."

771 F.2d at 613. Therefore, the court remanded the case for a "redetermination of what multiplier, if any, based solely on the contingent nature of the case is appropriate." *Id.* The court directed that on remand the district court:

"should examine the risks undertaken by each attorney separately and consider:

"1. what, if any, payment each attorney would have received had the suit not been successful;

"2. what, if any, costs or expenses each attorney would have incurred if the case had been lost;

"3. whether, after the successful verdict, Nachman and Moreno [plaintiff's attorneys] were completely dependent upon the court for their fees;

"4. the length of time and number or hours the case consumed during which Nachman was required to compensate his associates and carry his overhead expenses without assurance of compensation; and

"5. whether other attorneys refused to take this case because of a risk of nonpayment."

*Id.* at 613–14.

■ This court agrees with the circuits which have held that the contingent nature of a case may, by itself, justify an increase in the lodestar fee. The court will now consider the *Wildman* factors to determine whether an increase is appropriate in this case.

*As to Mr. Daly*

1. Had the plaintiff lost at trial, Mr. Daly's only payment would have been his retainer of $2,500.

2. Plaintiff, it appears, was obligated to pay Mr. Daly's expenses in this case.

3. Mr. Daly is not wholly dependent on this court for his fee. If the court awards him less than 125% of his normal fee (which elsewhere he has stated is $130 per hour), plaintiff is liable to him for the difference between what the court awards and 125% of his normal fee. In no event, however, is plaintiff liable for more than 25% of her net recovery. Thus, since plaintiff was successful, Mr. Daly is guaranteed at least the lesser of 25% of plaintiff's net recovery or 125% of his normal fee. On the other hand, as already mentioned, had plaintiff not been successful, Mr. Daly would have recovered nothing more than his retainer and expenses.

4. Until December 31, 1985, when the court filed its Memorandum of Decision (627 F.Supp. 655 (as revised)), Mr. Daly's recovery of anything more than his expenses and his retainer was uncertain. At that point he had spent 374.5 hours (430.4 less 55.9, which is the hours billed in 1986) on the case. Those hours had been spent over a period of more than two years. During this time, he had to carry all his normal overhead expenses with no assurance of compensation.

5. There is no evidence that other attorneys refused to take this case.

The court finds, based on these factors, that the contingent nature of Mr. Daly's recovery for 374.5 hours of his time justifies a 25% increase in his lodestar fee for those hours. Simply put, had plaintiff lost he would have been paid almost nothing for this time. Consequently, Mr. Daly shall receive a bonus of $14,043.75 (which is 25% of 374.5 × $150.00).

*As to Mr. Gresham*

Mr. Gresham entered this case after payment of fees was assured. The only dispute at that time was the amount of fees. That uncertainty is not sufficient to war-

rant adjustment of Mr. Gresham's lodestar fee.

### III. *Expenses.*

In addition to fees, plaintiff's counsel are entitled to recover costs and expenses related to this litigation. The affidavits of Mr. Daly and Mr. Gresham show that they incurred the following expenses:

| | Daly | Gresham |
|---|---|---|
| Filing complaint | $ 60.00 | |
| Depositions | 1,379.40 | |
| Travel | 429.01 | |
| Telephone | 257.55 | 12.05 |
| Copies | 1,123.43 | 107.00 |
| Postage | 103.02 | 6.58 |
| Meals | 77.33 | |
| Witness Fee | 70.00 | |
| Notebooks | 12.33 | |
| Federal Express & Bus Packages | 24.50 | |
| Parking | 1.50 | |
| Psychological Consultant Fee | 75.00 | |
| SUBTOTAL | 3,613.07 | 125.63 |
| Less error in first petition | (162.91) | |
| TOTAL | $3,450.16 | $125.63 |

The court finds that, with exception of the psychological consultant's fee of $75.00, all of these expenses were necessary to the presentation of the case, and are compensable.

### IV. *Order.*

IT IS THEREFORE ORDERED that defendants pay to Mr. Daly the following sums:

1.  Attorney's fee

    | Lodestar | $64,560.00 |
    |---|---|
    | Bonus | +14,043.75 |
    | TOTAL | 78,603.75 |

2.  Costs and Expenses ......... $ 3,375.16.

IT IS FURTHER ORDERED that defendants pay to Mr. Gresham the following sums:

Attorney's fee (Lodestar)... $ 4,556.25

Costs and expenses........... $ 125.63.