Charles NORWOOD, et al., Plaintiffs,

and

Lillie Ann Stewart, Antwerp Duncan, Mildred Glenn and Charlotte Chapter of the Old North State Medical, Dental and Pharmaceutical, Intervenors,

and

Bertha Chisholm, Additional Intervenor,

and

Kim Wallace, Randy Tucker, Roberta Sasportas and Anita Singley, Additional Intervenors,

v.

CHARLOTTE MEMORIAL HOSPITAL AND MEDICAL CENTER, and Charlotte-Mecklenburg Hospital Authority, Defendants.

No. C–C–78–370–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 13, 1987.

As Amended Feb. 20, 1987.

J. Levonne Chambers, George Daly, Jonathan Wallas, John T. Nockleby, Gilder Glazer and Geraldine Sumter, Ferguson, Stein, Watt, Wallas & Adkins (formerly Chambers, Stein, Ferguson & Becton), Charlotte, N.C., for plaintiffs.

J.W. Alexander, Jr. and John O. Pollard, Blakeney, Alexander and Machen, Charlotte, N.C., for defendants.

## ATTORNEY FEE ORDER

McMILLAN, District Judge.

This class action proceeding, No. C–C–78–370–M, was filed on December 19, 1978. It was consolidated with *Oliphant, et al., v. Charlotte Memorial Hospital and Medical Center, and Charlotte Mecklenburg Hospital Authority*, No. C–C–78–326–M, a similar class action filed on November 2, 1978. Plaintiffs alleged that the defendants followed patterns and practices of discrimination in employment on the basis of race and color which violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, and 42 U.S.C. § 1981 and § 1983.

The *Norwood* plaintiffs are represented by the law firm of Ferguson, Stein, Watt, Wallas & Adkins, previously Chambers, Stein, Ferguson & Becton ("Ferguson law firm"). In the past, George Daly was a member of the Ferguson law firm and helped represent the *Norwood* plaintiffs. Mr. Daly withdrew as counsel in this case on February 11, 1981.

Classes were conditionally certified in both the *Oliphant* case and the *Norwood* case prior to trial and the class definitions were modified upon entry of final judgment.

Trial began on October 22, 1981, and continued through October 30, 1981. After proposed findings of fact and conclusions of law were presented to the court and commented upon by the parties, the court entered its findings of fact and conclusions of law and judgment on June 21, 1983 (*Norwood* Docket # 101 and # 102).

The court certified the class as:

All black employees of defendants who have worked in or have sought or have been assigned to nonprofessional job positions (technical, skilled, semi-skilled and labor) who, at any time since October 13, 1973, have been discriminatorily denied a job, or discriminatorily assigned to a job, or discriminatorily denied transfer to a job, or discriminatorily discharged or subjected to retaliatory treatment or actions, because of race or color.

The court enjoined the defendants from discriminating against plaintiffs and members of the class on the basis of race in initial or later job assignments, transfer, discharges and training, and from retaliating against plaintiffs and class members who challenge or seek to enforce their rights to equal employment opportunity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

The court ordered reinstatement with back pay to the following individual *Norwood* plaintiffs: 1) Evelyn Alexander, who the court found was denied a data processing job which had been promised upon initial employment, was denied a transfer to a vacant job in 1976, and was discharged on April 3, 1978; 2) Bertha Chisholm, who was denied appointment as assistant supervisor in the lab in 1980; and 3) Lillie Ann Stewart McCain, who was denied the job of surgical technician trainee in July 1977 and was discharged in November 1977. The court dismissed, with prejudice, Lillie Ann Stewart McCain's claim of entitlement in 1977 to the job of data processing technician.

The court referred the claims of plaintiffs Randy Tucker, Lula Belle Miller, and other class members whose claims were not decided in the judgment, to a special master for recommendation.

Pursuant to 42 U.S.C. § 2000e–5(k), the court ruled:

14. Plaintiffs are the prevailing parties in this action. The defendants shall

pay plaintiffs' reasonable attorney fees, costs and expenses including expert witness and consultation fees, paralegal time and unusual clerical time for all work performed in this proceeding until the date of this judgment in accordance with an order to be entered regarding fees and expenses.

15. Plaintiffs' counsel shall also receive reasonable attorney fees, costs and expenses, including paralegal time and other proper expenses, for all future work done on behalf of the plaintiffs and class members for all proceedings before the special master and for work done in the implementation of this judgment, including fees and expenses for monitoring and examining the various reports required, in answering questions of class members and in investigating any alleged violations of this judgment.

(*Norwood* docket # 102).

The defendants appealed, and after full briefing and argument, the United States Court of Appeals for the Fourth Circuit entered a decision on October 10, 1985. The Fourth Circuit reversed the district court's creation of a subclass of persons discriminatorily denied a job and reversed the district court's factual findings concerning *Norwood* plaintiff Evelyn Alexander, and *Oliphant* plaintiffs Wilma Oliphant and Terry Ragin. The Fourth Circuit affirmed all other aspects of the trial court's judgment. *Oliphant, et al. and Norwood, et al. v. Charlotte Memorial Hospital and Medical Center and Charlotte-Mecklenburg Hospital Authority*, No. 83–1772 (4th Cir. Oct. 10, 1985). The Supreme Court denied the defendants' petition for certiorari on April 21, 1986. *Charlotte Memorial Hosp. v. Oliphant, et al.*, —— U.S. ——, 106 S.Ct. 1640, 90 L.Ed.2d 186 (1986).

On August 29, 1986, the *Norwood* plaintiffs filed an amended 1986 motion for counsel fees, costs and expenses for work performed in the case from February 6, 1974, through July 31, 1986 (*Norwood* docket # 127). Counsel for the *Norwood* plaintiffs expended over 1,400 hours during the twelve years of representing the plaintiffs without any compensation.

In support of the motion for attorneys' fees, the *Norwood* plaintiffs filed a brief (*Norwood* docket # 129), the second affidavit of Jonathan Wallas (*Norwood* docket # 128), and the affidavits of Fred A. Hicks (*Norwood* docket # 132), Nelson Casstevens (*Norwood* docket # 131), and James C. Fuller, Jr. (*Norwood* docket # 130). In addition, plaintiffs' counsel referred the court to their previous motion for counsel fees, costs and expenses filed on July 21, 1986 (*Norwood* docket # 123a), the affidavit of Jonathan Wallas (*Norwood* docket # 123b), and the affidavits of J. Levonne Chambers (*Norwood* docket # 86 and # 95), Carl Hoffman (*Norwood* docket # 123c), and Allan A. Parrow (*Norwood* docket # 90).

The defendants filed a brief in response to the *Norwood* plaintiffs' motion for counsel fees, costs and expenses. (*Norwood* docket # 137).

On September 9, 1986, the court held a lengthy hearing on the motion requesting attorneys' fees and on another pending motion concerning judgment on remand. On October 1, 1986, the court entered a judgment on remand (*Norwood* docket # 140), an order requiring notice to class members and former class members with respect to stage II proceedings (*Norwood* docket # 141), and a notice concerning hearings to determine appropriate relief (*Norwood* docket # 142).

On October 17, 1986, the *Norwood* plaintiffs filed a supplemental brief concerning future counsel fees (*Norwood* docket # 144). On November 5, 1986, the defendants filed a response. (*Norwood* docket # 149).

The court now rules on the question of the *Norwood* plaintiffs' counsel fees, costs and expenses for the period from February 6, 1974, through July 31, 1986. The court will enter a separate order concerning later counsel fees.

## I. *The Lodestar Fee*

■ Calculating a reasonable fee is a two-step process. First the court deter-

mines the base, or lodestar, fee. Then the court determines whether this amount should be adjusted upward or downward due to special circumstances in the case.

In determining the reasonable fee, courts in this circuit are to consider the twelve factors first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974):

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

Previously, courts in this circuit were to consider only *Johnson* factors one and five in setting the lodestar fee. The remaining factors were to be considered in determining whether to adjust the lodestar fee up or down. *Anderson v. Morris*, 658 F.2d 246 (4th Cir.1981).

The Fourth Circuit has recently ruled, however, that all twelve *Johnson* factors must be considered in setting the lodestar amount. *Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986). After considering all twelve *Johnson* factors in setting the lodestar figure, the court must, if adjustment to the fee is in order, consider them again.

In keeping with *Daly v. Hill*, the court will consider all the *Johnson* factors before setting the lodestar fee. The court will then consider adjusting the lodestar fee upward as counsel for plaintiffs have requested.

### A. *The time and labor required.*

The two affidavits of J. LeVonne Chambers, with attached time sheets (*Norwood* docket # 86 and # 95), the two affidavits of Jonathan Wallas with attached time sheets (*Norwood* docket # 123b and # 128), and a supplement to the second affidavit of Jonathan Wallas (*Norwood* docket # 138) show the total hours spent by the various *Norwood* attorneys. Robert Belton opened the *Norwood* file in February 1974. Mr. Belton worked as lead attorney in the case until he left the Ferguson law firm in 1975 and spent a total of 9.5 hours on the case. J. LeVonne Chambers undertook the role of the *Norwood* plaintiffs' principal lawyer in 1975 and spent a total of 537.15 on the case. George Daly assisted Mr. Chambers in preparing the case for trial and spent 100.75 hours on the case in 1980. Gilda Glazer assisted Mr. Chambers in trial preparation and spent 268.75 hours on the case. John Nockleby became the *Norwood* plaintiffs' lead counsel following the court's 1983 judgment and spent 470.90 hours on the case. Jonathan Wallas assisted Mr. Chambers in post trial findings, assisted Mr. Nockleby with the appeal, and assumed primary responsibility for the filing of the fee petition. Mr. Wallas spent 93.75 hours on the case. Other attorneys who have worked on the case include: Leslie Winner (3.75 hours), Geraldine Sumter (10.0 hours), John Gresham (3.0 hours), and Melvin L. Watt (1.0 hour).

The affidavits of Mr. Chambers and Mr. Wallas show the following time was devoted to the case by law clerks:

| | |
|---|---|
| Nicole Bynum | 14.50 hours |
| Laurie Tyler | 173.35 hours |
| M. Olene Sampson | 182.80 hours |
| Michele Nethercott | 52.50 hours |
| Rhonda Lipkin | 72.00 hours |
| Bernadette Moffat | 40.40 hours |
| Kelly McGrath | 56.30 hours |

The affidavits also show that paralegals for the *Norwood* plaintiffs' law firm spent a total of 977.30 hours on the case.

Jonathan Wallas states in his affidavit that the *Norwood* plaintiffs' law firm exercised "billing judgment" in eliminating time thought to be excessive or unreasonable. (*Norwood* docket # 123b).

### B. The novelty and difficulty of the questions.

The legal questions were not novel or difficult. The factual questions of class wide and individual discrimination were not novel, but were somewhat complicated. This factor does not favor a particularly high or low lodestar fee.

### C. The skill requisite to perform the legal service properly.

Employment discrimination cases require considerable skill because they are factually complicated and require extensive discovery. Employment discrimination cases are, for example, generally more complicated than routine automobile accident or products liability cases.

In this particular case, considerable skill was required to develop and analyze complicated statistical evidence, to digest and organize complex facts, and to present the facts in an orderly and efficient manner at trial. In addition, the defendants raised numerous issues on appeal seeking reversal. Considerable skill was required to present to the court of appeals the factual and legal authority supporting the plaintiffs' position.

This factor weighs in favor of a high lodestar.

### D. The preclusion of other employment by the attorney due to acceptance of the case.

Although the *Norwood* plaintiffs' counsel emphasize the large amount of time and effort they expended on the case, they do not claim that they were precluded from accepting other employment. This factor is not material to this case.

### E. The customary fee.

The *Norwood* plaintiffs seek compensation for their attorneys at the following rates:

| | |
|---|---|
| Mr. Chambers | $175.00 per hour |
| Mr. Daly | $150.00 per hour |
| Mr. Belton | $140.00 per hour |
| Mr. Wallas | $140.00 per hour |
| Mr. Watt | $140.00 per hour |
| Mr. Gresham | $125.00 per hour |
| Ms. Winner | $125.00 per hour |
| Mr. Nockleby | $115.00 per hour |
| Ms. Glazer | $100.00 per hour |
| Ms. Sumter | $ 90.00 per hour |

The *Norwood* plaintiffs also request $40.00 per hour for summer law clerk time, $35.00 per hour for paralegal time, and $60.00 per hour for Mary Olene Sampson, a 1985 law school graduate admitted to the North Carolina bar in September 1986.

The above figures are based on the 1986 rates charged by the attorneys in non-contingent cases. This litigation began over eight years ago. The attorneys have spent more than 1400 attorney hours in this case and no fee payments have been received.

In *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir.1986), the Fourth Circuit noted that when litigation spans a period of years during which no fee payments are received, the trial court must make an appropriate adjustment to historic rates to prevent dilution of the prevailing plaintiffs' lawyers' fees. The court held that the trial court has discretion to use current market rates or to increase the lodestar to "counterbalance the effect of inflation and foregoing interest on the value of the fee." 790 F.2d at 1081. This court has, in the past, used current rates. *See, Chisholm v. United States Postal Service*, 570 F.Supp. 1044, 1046 (W.D.N.C.1983). Using current rates is an appropriate way to adjust historic rates to prevent dilution of the fees of counsel for the *Norwood* plaintiffs.

This court recently discussed in great detail fees charged by local law firms. *See, Thomas v. Cooper Industries*, 640 F.Supp. 1374 (W.D.N.C.1986). In this case, the *Norwood* plaintiffs' counsel have sub-

mitted affidavits from attorneys James C. Fuller, Nelson Casstevens, and Fred A. Hicks, all of whom are familiar with the work of the *Norwood* plaintiffs' counsel, the work of this court, and the prevailing rates in this market.

Mr. Fuller states in his affidavit that he is familiar with the work of the *Norwood* plaintiffs' counsel and that the rates counsel request are in line with the non-contingent rates charged by similarly situated lawyers in the Charlotte legal community. (*Norwood* docket #130). Fuller states that in his opinion, counsel for the *Norwood* plaintiffs should receive a higher fee than requested to account for the risk the lawyers took in handling a contingent fee case for over eight years of litigation.

Mr. Casstevens also states that the rates requested by the *Norwood* plaintiffs' counsel are within the range of non-contingent fees charged by similarly situated attorneys in the Charlotte legal community. (*Norwood* docket #131). In addition, Casstevens notes that lawyers who accept contingent fee cases charge a higher fee to compensate themselves for the risk of nonpayment.

Mr. Hicks states that the rates requested by the various *Norwood* attorneys are reasonable and within the range of fees charged in this district by similarly situated attorneys. Hicks also states that lawyers will charge a higher fee in contingent fee cases to compensate for the risk of nonpayment.

The rates requested by counsel for the *Norwood* plaintiffs are in line with the customary fees charged by similarly situated lawyers within the local legal community. The court will consider below whether the risk of carrying a contingent fee case for over eight years justifies an increase in the requested rates.

### F. *Whether the fee is fixed or contingent.*

The fee in this case was contingent on success. The *Norwood* plaintiffs' attorneys have spent more than 1400 attorney hours, approximately and 1000 paralegal hours and 600 law clerk hours in this litigation that began over eight years ago. Total out-of-pocket costs and expenses, without interest, exceed $55,000. Counsel for the *Norwood* plaintiffs have received no payment for their legal time and have had to advance costs and expenses because the plaintiffs could not pay them themselves.

Thus, either the lodestar fee itself should be high, or the fee should, in the second step of the process of determining a reasonable fee, be adjusted upward. The court will follow the latter course.

### G. *Time Limitation Imposed by the Client or the Circumstances.*

There is no evidence that the time limitation in this case were either strict or lax, or that the case was in any way unusual in this respect.

This factor favors neither a high nor a low lodestar fee.

### H. *The Amount Involved and the Results Obtained.*

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that the extent of a plaintiff's success is an important factor that a district court should consider in determining the amount of fees to be awarded. The Court stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit ... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

461 U.S. at 435, 103 S.Ct. at 1940. The Court emphasized that "the most critical factor is the degree of success obtained." 461 U.S. at 436, 103 S.Ct. at 1941.

The defendants argue that the results obtained by the *Norwood* plaintiffs do not justify the lodestar fee counsel seeks because out of the thirty-seven claims asserted on behalf of the individual plaintiffs and the class, the plaintiffs obtained relief in only a total of eleven claims, less than 30 percent of the total claims asserted. The Supreme Court in *Hensley*, expressly rejected a mathematical approach which compares the total number of issues in the case to those actually prevailed upon, stating that "such ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11.

The *Norwood* plaintiffs have been successful in this litigation and are the prevailing parties. The extent of relief to be provided to the plaintiffs in this case is not entirely known at this time because there will be Stage II proceedings before a Special Master. However, some of the excellent results obtained in this litigation include:

1) All class members who have been discriminatorily assigned, denied transfer, discharged, or subjected to retaliatory treatment because of their race or color will be given the opportunity to present their claims to the Special Master and to be awarded appropriate relief. In excess of 4700 class members are eligible to file claims concerning discrimination occurring between 1973 and 1983.

2) The defendants have been enjoined from discriminating against class members with respect to those matters where classwide discrimination was found.

3) A number of individual plaintiffs, including Pamela Bennett, Ruth Coleman, Kim Wallace, Lillie Ann Stewart McCain, and Bertha Chisholm have won individual relief, the details of which will be determined by the Special Master.

4) The defendants will now be required to post job notices throughout its facilities and to accept job bids from employees. This job posting and bidding system is a significant departure from prior practice of the defendants.

5) The defendants are now required to canvass class members to obtain their qualification and interest in transfer and promotion, to establish and maintain job descriptions and to use job related criterial for various jobs at their facilities.

6) The defendants are required to submit reports for at least three years which will enable plaintiffs' counsel to ensure that the court's orders are carried out.

The court finds that the overall success obtained by the plaintiffs entitles the plaintiffs' counsel to a fully compensatory fee. Even though the plaintiffs did not ultimately succeed on every issue, plaintiffs were successful in bringing to an end pervasive race discrimination by the defendants. This result warrants full compensation.

I. *The Experience, Reputation, and Ability of the Attorneys.*

J. LeVonne Chambers is a former attorney and founding partner of the Ferguson law firm. Mr. Chambers, a nationally prominent civil rights attorney, is presently Director-Counsel of the NAACP Legal Defense & Educational Fund, Inc. Chambers' experience in civil rights litigation is outstanding. His reputation as a top-flight advocate is well deserved.

George Daly is an experienced civil rights litigator. He has tried scores of cases in federal and state courts and has argued approximately fifty appeals. Mr. Daly is a lawyer of outstanding ability. He has an excellent and well deserved reputation, particularly in employment discrimination cases.

Robert Belton is presently a Professor of Law at Vanderbilt University School of Law, where he specializes in employment discrimination litigation. While a member of the Ferguson law firm, Mr. Belton was lead attorney in a number of major employment discrimination class actions. Mr. Belton is an acknowledged expert in Title VII and employment discrimination law.

Jonathan Wallas, a former law clerk to this court, is an experienced and skilled civil rights litigator. Mr. Wallas has been litigating employment discrimination cases for about fourteen years and is currently the lead attorney in charge of overseeing all employment discrimination cases handled by the Ferguson law firm. The court knows the work of Mr. Wallas well. He is a lawyer of outstanding ability.

Melvin Watt is an active litigator of great skill and success who has been involved in a number of civil rights cases including *Caldwell v. Seaboard Coastline Railways.*

John Gresham was a law clerk to this court before he began practice in 1976. He has considerable experience in litigating employment discrimination cases. The court knows his work well. He is a lawyer of high ability.

Leslie Winner, another former law clerk, is an experienced civil rights advocate and trial attorney. She has handled a number of employment discrimination cases and in addition is well known for her work in major voting rights cases. She is a lawyer of exceptional ability.

John Nockleby began practicing law in 1981 after clerking for Judge Murnaghan of the Fourth Circuit Court of Appeals. Since 1981, he has been involved in numerous employment discrimination cases, at both the trial level and the appellate level. Mr. Nockleby has considerable litigation experience. He is a conscientious and skilled lawyer.

Gilder Glazer practiced with the Ferguson law firm from 1981 to 1984. During that time she was primarily an employment discrimination litigator. Ms. Glazer was involved in several major employment cases while practicing with the Ferguson law firm.

Geraldine Sumter began practicing with the Ferguson law firm in 1982 after clerking for Judge Charles Becton of the North Carolina Court of Appeals. She devotes almost all of her time to employment discrimination litigation. Ms. Sumter has been actively involved in a number of employment discrimination cases.

### J. The "Undesirability" of the Case.

In a similar case, this court recently noted that:

Employment discrimination cases are not particularly popular among lawyers. They are factually complicated and difficult to prove. A great deal of discovery is required, and plaintiffs usually are not able to pay the lawyer "up front." A lawyer must invest in his client's case. The lawyer recovers virtually nothing unless the plaintiff wins. Even then, the lawyer faces an enervating, destructive battle over fees. As a result, time spent by the lawyer is compensated, if at all, only years later."

*Thomas v. Cooper Industries,* 640 F.Supp. 1374 (W.D.N.C.1986).

This statement certainly applies to the present case which began over eight years ago. The affidavits of Charlotte attorneys James Fuller, Nelson Casstevens, and Fred Hicks (*Norwood* docket ## 130, 131, 132), state that very few firms in the Charlotte area would be willing to accept a large scale employment discrimination case on a contingent fee basis when they know that litigation may span a period of eight years and that they will need to invest over 1,300 hours of attorney time.

This case was sufficiently complicated, time-consuming, and risky. It would be considered "undesirable" by many lawyers. This factor favors a high lodestar fee.

### K. Nature and Length of the Professional Relationship with the Client.

The *Norwood* plaintiffs' counsel have had no other professional relationship with the plaintiffs.

This factor favors neither a high nor a low lodestar fee.

### L. Awards in Similar Cases.

This court recently awarded a lodestar fee of $150 per hour in an age discrimina-

tion case. *Taylor v. Home Insurance Company,* No. C–C–82–98–M (W.D.N.C. May 23, 1986) [Available on WESTLAW, DCTU database]. This court also awarded Mr. Daly a lodestar fee of $150 per hour and Mr. Gresham a lodestar fee of $125 per hour in an employment discrimination case. *Thomas v. Cooper Industries,* 640 F.Supp. 1374 (W.D.N.C.1986).

In 1984, the court awarded John Nockleby a rate of $100 per hour in a civil rights action filed against the Board of Governors of the University of North Carolina. The Fourth Circuit recently affirmed this award. *Jones v. Bd. of Governors,* 790 F.2d 1120 (4th Cir.1986).

This factor favors a substantial lodestar fee.

Based on the foregoing, the court finds that counsel for the *Norwood* plaintiffs should be compensated for the following hours at the following rates:

| | | |
|---|---|---|
| Mr. Chambers | 537.15 hours @ $175 per hour — | $94,001.25 |
| Mr. Daly | 100.75 hours @ $150 per hour — | 15,112.50 |
| Mr. Belton | 9.50 hours @ $140 per hour — | 1,330.00 |
| Mr. Wallas | 93.75 hours @ $140 per hour — | 13,125.00 |
| Mr. Watt | 1.00 hour @ $140 per hour — | 140.00 |
| Mr. Gresham | 3.00 hours @ $125 per hour — | 375.00 |
| Ms. Winner | 3.75 hours @ $125 per hour — | 468.75 |
| Mr. Nockleby | 470.90 hours @ $115 per hour — | 54,153.50 |
| Ms. Glazer | 269.00 hours @ $100 per hour — | 26,900.00 |
| Ms. Sumter | 10.00 hours @ $ 90 per hour — | 900.00 |
| | Total Attorney Lodestar — | $206,506.00 |

The court finds that the Ferguson law firm should be compensated for law clerk time at the following rates:

| | | |
|---|---|---|
| Nicole Bynum | 14.50 hours @ $40 per hour — | $ 580.00 |
| Laurie Tyler | 173.35 hours @ $40 per hour — | 6,934.00 |
| M. Olene Sampson | 182.80 hours @ $40 per hour — | 7,312.00 |
| M. Nethercott | 52.50 hours @ $40 per hour — | 2,100.00 |
| Rhonda Lipkin | 72.00 hours @ $40 per hour — | 2,880.00 |
| Bernadette Moffet | 40.40 hours @ $40 per hour — | 1,616.00 |
| Kelly McGrath | 56.30 hours @ $40 per hour — | 2,252.00 |
| | Total Law Clerk Lodestar: | $23,674.00 |

In addition, the court finds that the Ferguson law firm should be compensated for 977.30 hours of paralegal time, at a rate of $35 per hour.

Total Paralegal Lodestar — $34,205.50

## II. *Adjustments to the Lodestar.*

The court finds that no factors suggest that the lodestar fee should be reduced.

The *Norwood* plaintiffs' counsel ask that the court award a multiplier of 2.0 to the lodestar fee because of the risk of nonpayment. At the hearing on plaintiffs' motion for attorney fees, counsel for plaintiffs stated that plaintiffs were seeking this multiplier for attorney time, law clerk time, and paralegal time, not just attorney time.

In *Wildman v. Lerner Stores Corp.,* 771 F.2d 605 (1st Cir.1985), where fees were being sought under 42 U.S.C. § 1988, the First Circuit addressed the question whether, after *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), an attorney's fee award could be adjusted upward simply because the case had been taken on a contingent basis. The court noted that *four of the six circuits that had considered the question had held that such an increase was appropriate.* 771 F.2d at 611 (citing *LaDuke v. Nelson,* 762 F.2d 1318, 1332–33 (9th Cir.1985) (fees under the Equal Access to Justice Act); *Delaware Valley Citizens. Council for Clean Air v. Pennsylvania,* 762 F.2d 272, 282 (3rd Cir.1985) (under the fee provision of the Clean Air Act); *Sierra Club v. Clark,* 755 F.2d 608, 620 (8th Cir.1985) (under the fee provision of the Endangered Species Act); *Jones v. Central Soya Company, Inc.,* 748 F.2d 586, 591 (11th Cir.1984) (fees under the Age Discrimination in Employment Act)). The other two circuits had held that such an increase was only appropriate if the case or the success was exceptional. *See McKinnon v. City of Berwyn,* 750 F.2d 1383, 1392 (7th Cir.1984); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 28–29 (D.C.Cir.1984).

The First Circuit in *Wildman* joined the majority and held that a lodestar fee could be increased even without other reasons if the case had been contingent. The court wrote:

" ... adjustment of the lodestar figure, after examining the particular risks assumed by an attorney in a particular case, may be necessary in order to pro-

vide the 'reasonable attorney fee' envisioned by Congress...."

771 F.2d at 613. Therefore, the Court remanded the case for a "redetermination of what multiplier, if any, based solely on the contingent nature of the case is appropriate." Id. The Court directed that on remand the district court:

" ... should examine the risks undertaken by each attorney separately and consider:

"1. what, if any, payment each attorney would have received had the suit not been successful;

"2. what, if any, costs or expenses each attorney would have incurred if the case had been lost;

"3. whether, after the successful verdict, Nachman and Moreno [plaintiff's attorneys] were completely dependent upon the court for their fees;

"4. the length of time and number of hours the case consumed during which Nachman was required to compensate his associates and carry his overhead expenses without assurance of compensation; and

"5. whether other attorneys refused to take the case because of a risk of nonpayment."

*Id.* at 613–14.

This court agrees with the circuits which have held that the contingent nature of a case may, by itself, justify an increase in the lodestar fee. *See, Thomas v. Cooper Industries, Inc.,* 640 F.Supp. 1374 (W.D.N. C.1986). The court will now consider the *Wildman* factors to determine whether an increase is appropriate in this case.

The First Circuit in *Wildman* stated that the trial court should examine the risks undertaken by each attorney separately. Separate examination of attorney hours was appropriate in *Wildman* because the two attorneys awarded fees were from separate law firms. In the present case all of the *Norwood* plaintiffs' attorneys were associated with the Ferguson law firm when they rendered their services in this case. The court therefore will consider the risk to the firm as a whole.

1. The *Norwood* plaintiffs' counsel would have received nothing in fees if the plaintiffs had lost at trial or on appeal. The fee was totally contingent on success.

2. The *Norwood* plaintiffs have paid no money to their attorneys for costs and expenses. Counsel for the *Norwood* plaintiffs have advanced costs and expenses in excess of $55,000 because plaintiffs could not pay for the case.

3. The *Norwood* plaintiffs' counsel were wholly dependent on this court for their fee.

4. Until the Supreme Court denied the defendants' petition for certiorari on April 21, 1986 (leaving intact the Fourth Circuit's October 10, 1985, opinion substantially affirming the findings of fact and conclusions of law of this court), recovery by the *Norwood* plaintiffs' counsel of any fees or expenses was uncertain. At that point, counsel had spent 1,341.30 hours on the case. During the long period of litigation, the *Norwood* plaintiffs' counsel, the Ferguson law firm, had to carry all their normal overhead expenses with no assurance of compensation.

5. There is no evidence that other attorneys refused to take this case. However, the affidavits of Charlotte attorneys James Fuller, Nelson Casstevens and Fred Hicks (*Norwood* docket ## 130, 131, 132) indicate that few if any law firms in the Charlotte area would be willing to handle such a case and invest so much attorney time with no guarantee of return during the long period of litigation.

The Third Circuit in *Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d 648 (3rd Cir.1986), indicated that the trial court should identify the specific risks faced in instituting the litigation. 802 F.2d at 655. Therefore, in addition to the above findings, the court notes that this case involved a large number of distinct factual issues, a large number of individuals, and the need to prove company wide discrimination. The case was factually complicated and the plaintiffs' counsel faced substantial problems of organization

and proof at trial. Defendants raised numerous issues on appeal. The plaintiffs faced the real risk that the decision of the trial court would be reversed or substantially modified on appeal.

The court finds, based on these factors, that the contingent nature of recovery for 1,341.30 hours of attorney time justifies a 50% increase in the lodestar fee for those hours. The court will not award a multiplier for paralegal or law clerk time.

The *Norwood* plaintiffs' counsel should recover attorneys' fees in the following amounts:

| Attorney | Lodestar Hours | Contingency Bonus for Time Prior to 4/21/86 | Total Fee |
|---|---|---|---|
| Chambers | 537.15 @ $175 = $94,001.25 | 50% of 537.15 × $175 = $47,000.63 | $141,001.88 |
| Daly | 100.75 @ $150 = $15,112.50 | 50% of 100.75 × $150 = $ 7,556.25 | 22,668.75 |
| Belton | 9.5 @ $140 = $ 1,330.00 | 50% of 9.5 × $140 = $ 665.00 | 1,995.00 |
| Wallas | 93.75 @ $140 = $13,125.00 | 50% of 50.45 × $140 = $ 3,531.50 | 16,656.50 |
| Watt | 1.0 @ $140 = $140 | | 140.00 |
| Gresham | 3.0 @ $125 = $375 | | 375.00 |
| Winner | 3.75 @ $125 = $ 468.75 | 50% of 3.75 × $125 = $ 234.38 | 703.13 |
| Nockleby | 470.90 @ $115 = $54,153.50 | 50% of 360.95 × $115 = $20,754.63 | 74,908.13 |
| Glazer | 269 @ $100 = $26,900.00 | 50% of 269 × $100 = $13,450.00 | 40,350.00 |
| Sumter | 10 @ $90 = $ 900.00 | 50% of 9.75 × $90 = $ 438.75 | 1,338.75 |
| | | | $300,137.14 |

## III. *Costs and Expenses.*

■ In addition to fees, the *Norwood* plaintiffs are entitled to recover costs and expenses related to this litigation. The affidavits of Jonathan Wallas (*Norwood* docket ## 123b, 128, and 138) show that the costs and expenses incurred by the *Norwood* plaintiffs' counsel from February 6, 1974, through July 31, 1986, total $58,152.39.

Costs and Expenses through March 1982:

| | |
|---|---|
| Filing Fee | $ 15.00 |
| Service Fee | 18.16 |
| Depositions | 498.80 |
| Transcript | 599.50 |
| Witness Fees | 60.00 |
| Telephone | 140.31 |
| Xerox Copies | 385.64 |
| Postage (Federal Express) Bus Packages | 32.01 |
| Travel Expenses | 48.35 |
| Microfilm | 235.85 |
| Microview for Reproduction of Microfiche | 2,781.03 |
| Dr. Toye Bird (Research) | 200.00 |
| Hoffman Research Associates | 48,363.52 |
| [Plaintiffs' counsel has paid $23,765.09] | |
| Additional Secretarial Assistance | 609.35 |
| Rental Microfile Machine | 1,200.00   $55,187.52 |

Costs and Expenses from 3/31/82 through 2/23/83:

| | | |
|---|---:|---:|
| Xerox Copies | $ 216.45 | |
| Postage | 15.89 | |
| Telephone | 29.40 | |
| Copies | 2.50 | $ 264.24 |

Costs and Expenses from 2/24/83 through 12/31/84:

| | | |
|---|---:|---:|
| Equal Employment Opportunity Commission | 92.25 | |
| Clerk Fee | 8.00 | |
| Telephone | 97.50 | |
| Xerox Copies | 955.00 | |
| Postage | 85.00 | |
| Travel | 646.81 | |
| Federal Express | 12.50 | |
| Printing | 6.50 | 1,903.56 |
| | | $57,355.32 |

Costs and Expenses from 1/1/85 through 6/30/86:

| | | |
|---|---:|---:|
| Photocopying | $ 464.50 | |
| Postage | 43.94 | |
| Special Courier | 62.50 | |
| Telephone | 96.61 | 667.55 |

Costs and Expenses from 7/1/86 through 7/31/86:

| | | |
|---|---:|---:|
| Photocopying | $ 119.80 | |
| Postage | 6.27 | |
| Telephone | 3.45 | 129.52 |
| | Total: | $58,152.39 |

Total paid by <u>Norwood</u> plaintiffs' counsel: $33,553.96

A large part of the expenses of the *Norwood* plaintiffs is the bill of Hoffman Research Associates (HRA) of $48,363.82. The plaintiffs hired HRA to conduct a computer/statistical analysis of the defendants' utilization of black employees. Dr. Alan Parrow, one of the consultants with HRA, states in his May 12, 1982, affidavit that the time spent by HRA was necessary to his testimony at trial, that the hourly rate charged was the usual and customary rate for such services, and that the expenses billed to the *Norwood* plaintiffs were necessarily and reasonably incurred (*Norwood* docket #90). Dr. Parrow states in his affidavit that the plaintiffs are obligated to pay $48,363.52 plus interest at the rate of 1.5 percent per month.

Carl Hoffman, President of HRA, states in his affidavit (*Norwood* docket #123c filed July 25, 1986) that it is HRA's customary practice to charge and collect interest at the rate of 1½% per month on any statement balances which are unpaid after thirty days. Hoffman states that the plaintiffs have paid $23,765.09, and that as of July 21, 1986, the outstanding balance owed (with 1½% per month interest) was $51,249.08.

The defendants, in their response to the *Norwood* plaintiffs' motion for counsel fees, costs, expenses, and expert witness fees (*Norwood* docket #137), do not object to any of these expenses. The defendants have not claimed that any of the expenses were excessive, unnecessary, or unrelated to the presentation of the case.

The court finds that all of the above listed expenses were reasonable, were necessary to the litigation of this case, and are compensable.

The *Norwood* plaintiffs request that the court award interest on the costs and expenses as they accrued. The *Norwood* plaintiffs contend that extensive costs and expenses were incurred in this case, and have remained unpaid for many years, and that an interest award is needed to make *Norwood* plaintiffs' counsel, who advanced the expenses, whole. The plaintiffs suggest that the court use the adjusted prime interest rate utilized by the National Labor Relations Board and the Internal Revenue Service. The *Norwood* plaintiffs also request that the defendants pay Hoffman Research Associates the interest due on plaintiffs' account.

At the hearing on September 9, 1986, plaintiffs' counsel informed the court that he could find no authority directly supporting an award of interest. Likewise, the defendants' counsel stated he could find no authority to the contrary.

In *Wheeler v. Durham City Board of Education*, 585 F.2d 618, 623 (4th Cir. 1978), the Fourth Circuit Court of Appeals held that an award of reasonable attorneys' fees under the Emergency School Aid Act of 1972, 20 U.S.C. § 1617, included litigation expenses. In *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir.1986), the Fourth Circuit Court of Appeals held that a prevailing plaintiff is entitled to reasonable litigation expenses under 41 U.S.C. § 1988. The Court quoted with approval from *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir.1983), where the Eleventh Circuit Court of Appeals stated that:

[r]easonable attorneys fees under [§ 1988] must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly.

698 F.2d 1190, quoted in *Daly v. Hill*, 790 F.2d at 1083.

In *Daly v. Hill* the court also said that attorneys' fees should be adjusted in some way to "counterbalance the effect of inflation and foregone interest on the value of the fee." 790 F.2d at 1081. The award of interest on litigation expenses is a reasonable corolary of that holding. Both the attorneys' fees and the litigation expenses borne by counsel should be adjusted in some way to compensate for the long delay in payment.

## IV. *Order*

IT IS THEREFORE ORDERED that:

1. The defendants shall pay counsel for the *Norwood* plaintiffs the following attorneys' fees:

| Attorney | Lodestar | Bonus | Total |
|---|---|---|---|
| Mr. Chambers | $ 94,001.25 | $ 47,000.63 | $141,001.88 |
| Mr. Daly | 15,112.50 | 7,556.25 | 22,668.75 |
| Mr. Belton | 1,330.00 | 665.00 | 1,995.00 |
| Mr. Wallas | 13,125.00 | 3,531.50 | 16,656.50 |
| Mr. Watt | 140.00 | | 140.00 |
| Mr. Gresham | 375.00 | | 375.00 |
| Ms. Winner | 468.75 | 234.38 | 703.13 |
| Mr. Nockleby | 54,153.50 | 20,754.63 | 74,908.13 |
| Ms. Glazer | 26,900.00 | 13,450.00 | 40,350.00 |
| Ms. Sumter | 900.00 | 438.75 | 1,338.75 |
| Totals: | $206,506.00 | $ 93,631.14 | $300,137.14 |

2. The defendants shall pay counsel for the *Norwood* plaintiffs, $33,553.96, plus interest, for costs and expenses. This figure includes the $23,765.09 that plaintiffs' counsel paid Hoffman Research Associates, but does not include the unpaid balance of the HRA bill.

The parties shall attempt to agree on the amount of interest owed the *Norwood* plaintiffs' counsel for costs and expenses. The interest rate used should be the adjusted prime interest rate utilized by the National Labor Relations Board and the Internal Revenue Service. If the parties fail to agree on the amount of interest, the court will decide the issue.

3. The defendants shall pay Hoffman Research Associates the unpaid portion of the HRA bill ($24,598.43) plus interest. The interest rate used should be the adjusted prime interest rate utilized by the National Labor Relations Board and the Internal Revenue Service.

4. The defendants shall pay counsel for the *Norwood* plaintiffs the sum of $34,205.50 for paralegal fees, and the sum of $23,674.00 for law clerk fees.

This 18th day of February, 1987.