**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KEVIN L. STUPAY; DIANE L. STUPAY,
<u>Plaintiffs-Appellees,</u>

v.

THE EMBASSY OF THE SULTANATE OF
OMAN,                                                      No. 98-2164
<u>Defendant-Appellant,</u>

and

SALEM AL-MASHANI,
<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Theresa Carroll Buchanan, Magistrate Judge.
(CA-97-1353-A)

Argued: May 3, 1999

Decided: July 23, 1999

Before MURNAGHAN, LUTTIG, and KING,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gerald Manly Bowen, GERALD M. BOWEN LAW
OFFICES, McLean, Virginia, for Appellant. Michael Sterling Ding-

man, HAZEL & THOMAS, P.C., Falls Church, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kevin and Diane Stupay ("Stupays") filed this action alleging breach of a residential lease agreement against the Embassy of the Sultanate of Oman ("Embassy") and Salim Al-Mashani, the First Secretary of the Embassy, in the district court for the Eastern District of Virginia. Shortly after the district court ruled on the parties' dispositive motions, the Stupays and the Embassy entered into a Joint Stipulation of Settlement ("Settlement Agreement"), which was subsequently approved by the district court. The parties agreed that the Stupays' claims for attorneys' fees and costs would be resolved by a United States Magistrate Judge as if the Stupays had prevailed on their breach of contract claims.[1] The district court awarded the Stupays $43,866.67 in attorneys' fees and $5,287.82 in costs. The Embassy appeals, asserting that, under the criteria originally set forth by this court in Barber v. Kimbrell's Inc., 577 F.2d 216 (4th Cir. 1978), the district court was clearly wrong in finding that the Stupays were entitled to such a large fee award. Finding no abuse of discretion, we affirm.

I.

The Stupays own a house in Herndon, Virginia. In 1995, Kevin Stupay, his wife, and their four children moved to Moscow, Russia. On June 17, 1995, the Stupays leased their house to Salim

_____

[1] The residential lease agreement specifically provides for the recovery of attorneys' fees and costs.

2

Al-Mashani and the Embassy for a period of two years.[2] The lease agreement provided that if Mr. Al-Mashani intended to be absent from the residence for more than fourteen consecutive days, he was required to notify the Stupays' management company.

In the winter of 1996, Mr. Al-Mashani apparently left the United States on an extended vacation. Neither Mr. Al-Mashani nor anyone from the Embassy informed the Stupays' management company that the residence was unoccupied. The Stupays allege that when Mr. Al-Mashani left the house, he manually turned off the heat. As a result, a pipe located on the upper floor of the house froze and burst, causing substantial damage to the interior of the house.

After contacting the Embassy and attempting to conduct some preliminary settlement negotiations, the Stupays filed suit against the Embassy and Salim Al-Mashani in the district court. [3] The Embassy and Mr. Al-Mashani responded by claiming sovereign and diplomatic immunity, and both filed Rule 12(b)(6) motions to dismiss.[4] The district court granted Mr. Al-Mashani's motion to dismiss; however, the court held that the plaintiffs' allegations, if taken as true, invoked the "commercial activity" exception of the Foreign Sovereign Immunities Act. See 28 U.S.C. § 1605(a)(2). Consequently, the court denied the Embassy's parallel motion.

_____

[2] The record and the parties' arguments here clearly indicate that whether the Embassy was, in fact, a party to the lease was a hotly disputed factual issue. Nevertheless, at the time the parties entered into the Settlement Agreement, the Embassy remained a party to the litigation. Whether the Embassy was actually a party to the lease is irrelevant to the question we must decide.

[3] The Stupays originally filed suit in the Circuit Court of Fairfax County, Virginia; however, that lawsuit was voluntarily dismissed and the litigation was reinstituted in federal court.

[4] The Embassy claimed that, as a foreign sovereign, it was immune from the jurisdiction of both federal and state courts pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq. Salim Al-Mashani claimed that he was a diplomatic agent and therefore was immune from the jurisdiction of the federal courts pursuant to the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227; T.I.A.S. 7502; 500 U.N.T.S. 95, and the Diplomatic Relations Act, 22 U.S.C. § 254, et seq.

In November 1997, immediately prior to filing its motion to dismiss, the Embassy made an Offer of Judgment to the Stupays, pursuant to Rule 68 of the Federal Rules of Civil Procedure. The Stupays rejected the Offer of Judgment. Although the Embassy's counsel informally approached the Stupays' attorneys regarding settlement during the course of discovery, no other offer of settlement was made by the Embassy until after the district court ruled on the parties' dispositive motions.

At the close of discovery, the Embassy filed a motion for summary judgment on the grounds that (1) it was not a party to the lease, and (2) the consequential damages sought by the Stupays were not recoverable because they were not within the contemplation of the parties when they executed the lease.

The Stupays filed a Motion for Partial Summary Judgment seeking two judicial declarations. First, the Stupays asked the court to rule as a matter of law that the Embassy was a party to the lease. Second, the Stupays sought a ruling from the court that the Embassy breached the lease by failing to notify the Stupays' management company when Mr. Al-Mashani left the house unoccupied.

On May 22, 1998, the district court denied the Stupays' Motion for Partial Summary Judgment and granted the Embassy's motion in part. The court agreed with the Embassy that, to the extent the Stupays were claiming damages outside the contemplation of the parties at the time the lease was signed, those damages were not recoverable.

Five days after the entry of this order, the parties agreed to resolve the Stupays' remaining claims. In settlement, the Embassy agreed to pay the Stupays $17,500 in compensatory damages and to pay any amount the court awarded the Stupays for attorneys' fees and costs. The parties also agreed to submit the Stupays' claims for fees and costs to a United States Magistrate Judge, who would determine the appropriate award as if "plaintiff prevailed on its [sic] breach of lease claim."[5]

_____

[5] Paragraph 4 of the Settlement Agreement provides:

> The parties recognize that the Plaintiffs have asserted a claim for attorneys fees and costs resulting from representation herein by

4

Thereafter, on June 2, 1998, the parties appeared before the magistrate judge. The Embassy objected to the Stupays' fee petition on the grounds that, had the Stupays not pursued a claim for consequential damages, the lawsuit would have settled much earlier and most of the Stupays' attorneys' fees and costs would never have been incurred. The Stupays responded that they believed a good faith basis had existed for seeking those damages. Based on their analysis, the "consequential" damages were more properly characterized as direct damages, recoverable under the applicable Virginia law. Additionally, the Stupays argued, the discovery undertaken in the lawsuit focused on whether the Embassy was a party to the lease and if, in fact, Mr. Al-Mashani had turned off the heat in the house.

The magistrate judge found that virtually all of the attorneys' fees and costs claimed by the Stupays were reasonable and necessary. In addition, the court recognized that the parties had previously stipulated that the rates charged and the time expended by the Stupays' counsel were reasonable and appropriate.**6** Stupay v. The Embassy of

_____

Hazel & Thomas, and that presently the grand total of all such fees and costs claimed is approximately $55,000. The parties stipulate and agree that Plaintiffs' attorneys fees and costs claims shall be resolved by an adversary hearing before a United States Magistrate Judge. The conduct of such hearing will be subject to the following stipulations. (1) The rates charged by Hazel & Thomas are fair and reasonable, (2) the time expended on the tasks and matters itemized is reasonable and appropriate for such tasks and matters, (3) the defendant does not concede and is free to argue its objections that the tasks and matters undertaken were not required, necessitated or appropriate because this case could have been resolved or settled without undertaking these tasks and that, therefore, an award of attorneys fees and costs is not appropriate or reasonable without regard to the rate or amount of time expended, (4) Plainitffs' [sic] basis for seeking attorney's fees and costs and the criteria and law to be applied by the Court to determine Plaintiffs application or motion for an award of fees and costs shall be the same as would be applicable had plaintiff [sic] prevailed on its [sic] original breach of lease claim.

**6** The magistrate judge did not simply rubber stamp the Stupays' fee petition. The court excluded the attorneys' fees and costs incurred in the preparation and filing of the Stupays' motion for judgment in state court, as well as one-third of the fees and costs incurred by the Stupays in defending against the Embassy's partially successful summary judgment motion.

5

the Sultanate of Oman, 97-CV-1353, Tr. at 49 (E.D. Va. June 2, 1998). The magistrate judge concluded that the central issue throughout the litigation was whether the Embassy was a party to the lease, thereby making it potentially liable for payment of rent or consequential damages. The court noted that virtually none of the discovery undertaken by either party focused on the consequential damages issue, and reasoned that, if the consequential damages claim had been blocking settlement of the lawsuit, the Embassy could have filed its summary judgment motion regarding that issue earlier in the litigation. The Embassy's failure to do so was a tactical decision. Consequently, the magistrate judge awarded the Stupays $43,866.67 in attorneys' fees and $5,287.82 in costs. The Embassy appeals that award.

II.

The Embassy seeks a reversal of the court's award of attorneys' fees and costs, asserting that the magistrate judge erred by failing to properly weigh the Stupays' degree of success on their claims. We review the amount of an award of attorneys' fees and costs for abuse of discretion. Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998). "Reversal for abuse of discretion is reserved for those instances in which the court is clearly wrong; an award within the discretion of the court should be affirmed even though we might have exercised that discretion quite differently." Id. (internal quotations omitted).

As we have previously noted, in order to properly calculate an award of attorneys' fees, a district court should "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Id. (quoting Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986)). The district court should look to the factors we originally set out in Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978), for guidance in making the determination of "reasonable" hours and rates.[7]

_____

[7] Those factors are:

> (1) the time and labor expended;

> (2) the novelty and difficulty of the questions raised;

6

While the Embassy correctly asserts that the Supreme Court has designated "the degree of success obtained" as "the most critical factor" in calculating a fee award, <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436 (1983), it is an oversimplification of the Court's ruling to maintain that a district court's inquiry is complete when it has determined whether a party was successful on a claim. The appropriate inquiry is whether the claims on which the party prevailed were related to or intertwined with the party's unsuccessful claims. <u>Brodziak</u>, 145 F.3d at 197. When a party's successful claims are unrelated to the unsuccessful ones, it is inappropriate to award fees and costs for the latter. <u>Hensley</u>, 461 U.S. at 435. Where, however, the "plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis." <u>Id.</u> In such a case, the court should allow the recovery of the fees and costs incurred as a result of an attorney's attention to the litigation as a whole.

In this case, the Stupays' fee petition was predicated upon the terms of the Settlement Agreement. The Settlement Agreement

_____

> (3) the skill required to properly perform the legal services rendered;
>
> (4) the attorney's opportunity costs in pressing the instant litigation;
>
> (5) the customary fee for like work;
>
> (6) the attorney's expectations at the outset of the litigation;
>
> (7) the time limitations imposed by the client or circumstances;
>
> (8) the amount in controversy and the results obtained;
>
> (9) the experience, reputation and ability of the attorney;
>
> (10) the undesirability of the case;
>
> (11) the nature and length of the professional relationship between attorney and client; and
>
> (12) attorneys' fees awards in similar cases.

<u>Brodziak</u>, 145 F.3d at 196 (quoting <u>Barber</u>, 577 F.2d at 226 n.28).

7

expressly stipulated that the rates charged by the Stupays' attorneys were reasonable. See supra, note 5. Furthermore, the Embassy clearly agreed that the time the Stupays' attorneys expended to complete the tasks undertaken was reasonable. Id. In light of these unambiguous stipulations, it was not necessary to turn to the Barber factors for guidance. The purpose of the Barber factors is to assist the court in determining whether the rate charged and the hours expended by counsel were "reasonable" where the reasonableness of the fee is disputed. In this case, the parties agreed that the rates and hours were reasonable.

Additionally, the parties agreed that the court would apply the "criteria and law . . . as would be applicable had plaintiff prevailed on its original breach of lease claim." See supra, note 5. Therefore, for the purposes of determining the fee award, the court considered the Stupays successful on their breach of lease claim, but unsuccessful on their claim for consequential damages arising out of the breach of that lease.

Taking these stipulations into account, the court was required to resolve two remaining questions. First, was it reasonable for the Stupays' attorneys to undertake the tasks itemized on their invoices at all, or should this lawsuit have been resolved by settlement prior to the undertaking of those tasks? Second, did the Stupays' unsuccessful claims share a "common core of facts" with their successful claim such that it would be difficult or impossible to divide the hours expended on a claim-by-claim basis?

The magistrate judge found that the lawsuit would not have settled prior to the undertaking of the itemized tasks by the Stupays' attorneys. Significantly, the magistrate judge also found that the only settlement offer made by the Embassy, prior to its entry into the Settlement Agreement, was the November 1997 Offer of Judgment. The court did not find any subsequent conversations between the Embassy's counsel and the Stupays' attorneys as including actual offers of settlement. Additionally, the court found that the Embassy vigorously defended this lawsuit on the grounds that it was not a party to the lease in question. That element was crucial to all of the Stupays' claims, not merely their claim for consequential damages. Finally, the court concluded that the Embassy made the tactical deci-

8

sion to wait until the close of discovery to file a motion for summary judgment on the issue of the Stupays' consequential damages claim when, by its own admission, the Embassy could have filed that motion for summary judgment much earlier in the case.

Having found that the case would not have settled before the Stupays incurred the attorneys' fees, the court then turned to the question of whether any of the Stupays' attorneys' fees could be attributed solely to the unsuccessful claims. In fact, the court separated and denied some of the fees requested by the Stupays as unrelated to their successful claims.[8] The court then found the remainder of the Stupays' fees and costs to be so intertwined with their successful claims that further reduction would be unfair. Under the circumstances of this case, this ruling of the magistrate judge was not clearly wrong.

III.

A district court's award of attorneys' fees and costs shall be reversed as an abuse of discretion only in those instances when the court is clearly wrong. Brodziak, 145 F.3d at 196. Since the determination of the award of attorneys' fees and costs to the Stupays' counsel was not clearly wrong, we find no abuse of discretion and affirm.

AFFIRMED

_____

[8] The court's order states, in pertinent part: "Plaintiffs' petition is reduced by the following: $248.00 in fees and $139.50 in costs related to the Motion for Judgment filed in Fairfax Circuit Court; $2,026.00 for one half of the fees incurred in connection with Defendants' Motion to Dismiss; $3,360.83 for one third of the fees incurred in connection with Defendants' Motion for Summary Judgment; and $875.00 of the fees incurred during settlement discussions."

9